Deborah J. La Fetra, Cal. Bar No. 148875
dlafetra@pacificlegal.org
Timothy R. Snowball, Cal. Bar No. 317379
tsnowball@pacificlegal.org
Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Phone: 916-419-7111

Jeffrey M. Schwab (*Pro Hac Vice Application to be Filed*)
jschwab@libertyjusticecenter.org
James J. McQuaid (*Pro Hac Vice Application to be Filed*)
jmcquaid@libertyjusticecenter.org
Liberty Justice Center
190 South LaSalle Street
Suite 1500
Chicago, Illinois 60603
Phone: 312-263-7668
Fax: 312-263-7702

*Attorneys for Plaintiffs,*
*Michael Jackson and Tory Smith*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Michael Jackson and Tory Smith,<br><br>Plaintiffs,<br><br>v.<br><br>Janet Napolitano, in her official capacity as President of the University of California; Teamsters Local 2010; Xavier Becerra, in his official capacity as Attorney General of the State of California; and Betty T. Yee, in her official capacity as Controller of the State of California,<br><br>Defendants. | Case No.: **'19CV1427 LAB BGS**<br><br>**CIVIL RIGHTS COMPLAINT SEEKING DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES**<br><br>[42 U.S.C. § 1983] |

///

///

**INTRODUCTION**

Public employees have a First Amendment right not to be compelled by their employer to join a union, *Knox v. Service Employees Int'l Union, Local 1000*, 567 U.S. 298, 322 (2012), or to pay any fees to that union unless an employee "affirmatively consents" to waive that right, *Janus v. Am. Fed. of State, Cty. and Mun. Employees, Council 31*, 138 S. Ct. 2448, 2486 (2018). Such a waiver must be "freely given and shown by 'clear and compelling' evidence." *Id*. Union dues deduction authorizations signed by public employees in California before *Janus* cannot constitute affirmative consent by those employees to waive their First Amendment right not to join or pay dues to a union because the Supreme Court had not yet recognized that right.

Additionally, in order to give informed, affirmative consent to waive the exercise of a constitutional right, an individual must first know that the constitutional right exists. But on the day that *Janus* was decided, then-Governor Jerry Brown signed Senate Bill 866 into law. A "budget rider" bill that went into effect immediately, it contains provisions, collectively referred to herein as the Gag Rule statutes, that prohibit public employees from talking to their own employers—and employers from talking to their own employees—about payroll deductions, union membership, or their constitutional rights recognized by the *Janus* decision.

Michael Jackson and Tory Smith (Plaintiffs) have not provided the affirmative consent necessary to waive their First Amendment rights to refrain from joining or providing monetary support to Teamsters Local 2010, nor were they able to communicate with their employer about the nature—or even existence—of their rights recognized by *Janus*. Instead, officials at the University of California, San Diego, told Plaintiffs that they were muzzled from discussing union dues deductions because of the SB 866 Gag Rule statutes and that Plaintiffs must direct their question to union representatives (who have an incentive to remain silent). UCSD continued to take money out of their paychecks to send to the union. The Gag Rule statutes withhold the information Plaintiffs and other public employees need in order to meet the standard for waiver required by *Janus*, burden their First Amendment right to refrain from subsidizing a union, and violate their rights to procedural and substantive due process under the 14th Amendment.

///

Therefore, Plaintiffs bring this case under 42 U.S.C. § 1983 and 28 U.S.C. § 2201(a), seeking declaratory and injunctive relief, as well as damages in the amount of the dues previously deducted from their paychecks in violation of their First Amendment rights.

## JURISDICTION AND VENUE

1. This case raises claims under the First and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

2. Venue is proper because a substantial portion of the events giving rise to the claims occurred in the Southern District of California. 28 U.S.C. § 1391(b)(2).

## PARTIES

3. Plaintiff Michael Jackson (Jackson) works as a shift supervisor in the Special Events Parking department at the University of California, San Diego (UCSD). He resides in Chula Vista, California. He is a "state employee" as defined by Cal. Gov't Code section 1150(a).

4. Plaintiff Tory Smith (Smith) works in the Special Events Parking department at UCSD. He resides in San Diego, California. He is a "state employee" as defined by Cal. Gov't Code section 1150(a).

5. Defendant Janet Napolitano is President of the University of California. She is sued in her official capacity. University of California, San Diego (UCSD) is a campus of the University of California system overseen by Napolitano. It is a "public employer" as defined by Cal. Gov't Code section 1150(f)(1). The Office of the General Counsel serves the Office of the President and is authorized to accept of service of process on the President at 1111 Franklin Street, 8th Floor, Oakland, California 94607 in Alameda County, California.

6. Defendant Teamsters Local 2010 (Local 2010 or Union) is an "employee organization" as defined by Cal. Gov't Code section 1150(c). It has offices at 9900 Flower Street, Bellflower, California 90706 in Los Angeles County, California.

7. Defendant Xavier Becerra, California's Attorney General, is sued in his official capacity as the representative of the State of California charged with the enforcement of state laws,

///

including the provisions challenged in this case. His address for service of process is 300 South Spring Street, Los Angeles, California, 90013 in Los Angeles County.

8. Defendant Betty T. Yee, California's Controller, is sued in her official capacity as the state's chief fiscal executive officer responsible for disbursing paychecks for all state employees. Her address for service of process is Legal Office, State Controller's Office, 300 Capitol Mall, Suite 1850, Sacramento, California 95814.

## BACKGROUND AND FACTS

### A. First Amendment Rights Recognized by *Janus*

9. On June 27, 2018, the Supreme Court held in *Janus v. AFSCME*, 138 S. Ct. 2448, that the government cannot require public employees to pay union dues or fees without the employees' "clear and affirmative" waiver of their First Amendment right to refrain from supporting the union. *Janus* overturned forty years of case law that authorized agency shop, or mandatory union service fees, in public sector employment. In California, and all other states, no public employee can be compelled, as a condition of employment to pay dues or fees to a union.

10. *Janus* explains what is required for public employees to waive their First Amendment right to refrain from subsidizing the union:

> Neither an agency fee nor any other payment to the union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay. By agreeing to pay, nonmembers are waiving their First Amendment rights, and such a waiver cannot be presumed. Rather, to be effective, the waiver must be freely given and shown by "clear and compelling" evidence. Unless employees clearly and affirmatively consent before any money is taken from them, this standard cannot be met.

138 S. Ct. at 2486.

### B. Statutory Authorization for Union Membership and Dues Collection

11. The relevant sections of SB 866 are attached as Exhibit A.

12. California law requires the University of California to deduct union dues from its employees' paychecks. Cal. Gov't Code § 3583.5.

///

///

13. Public employees can make, cancel, or change a payroll deduction by submitting a form approved by the state Controller, *except* deductions that are paid to an employee organization. Cal. Gov't Code §§ 1153(a), (b); 1157.10.

14. Only an "employee organization" (union) can ask the Controller to make, cancel, or change payroll deductions related to the union's representation. Cal. Gov't Code §§ 1153(h); 1157.10.

15. Local 2010 requested that membership dues be deducted directly from the paychecks of Jackson and Smith, as permitted by Cal. Gov't Code § 1152.

16. Under California law, unions may adopt a "maintenance of membership provision" regarding how and when government employees can withdraw from a union. Cal. Gov't Code § 3515.

17. Under California law, government employees can be forced to remain members of a union without their consent, as long as the collective bargaining memorandum of understanding contains a "maintenance of membership" provision that allows employees to withdraw from the union thirty days prior to the expiration of the memorandum by signing a withdrawal letter to the union and to the Controller. Cal. Gov't Code §§ 3513(i) and 3583.

18. Under California law, government employers are instructed to rely on unions to determine which employees have authorized dues deductions, and employee requests to stop deductions must be directed to the union rather than the employer. Cal. Gov't Code § 1157.12.

19. Acting in concert under color of state law, the University of California, through Defendant Napolitano, entered into a collective bargaining agreement (Agreement), with Local 2010 effective April 19, 2017, through March 31, 2022.

20. The Agreement contains an article entitled "Payroll Deductions" which provides, in relevant part:

A. GENERAL CONDITIONS
Upon receipt of a written individual authorization form from Teamsters Local 2010 or an employee covered by this Agreement, the University will deduct from the pay due such employee the monthly amount certified by the Union to be the dues required for the employee's membership in the Union. . . .

* * *

D. CANCELLATION OF DEDUCTIONS

Any employee may cancel or terminate his/her authorization for Teamsters Local 2010 payroll deduction payment of member dues in accordance with the Teamsters Local 2010 membership application signed by the employee. Following Teamsters Local 2010 notification to the University of such cancellation such an employee's payroll deduction shall automatically revert from dues to fair share service fees, without loss of any time, unless conscientious objector status has been previously authorized by Teamsters Local 2010.

**C. Plaintiffs' Employment, Union Membership, and Assertion of Rights**

**1. Michael Jackson**

21. Jackson began his employment on the Parking Management staff at UCSD in October 2013.

22. A Special Events Parking Lead in the Transportation department, Jackson is a morning shift supervisor responsible for managing all aspects of the ebb and flow of traffic on campus, facilitating parking in general and for special events. He works with a staff of student and full-time employees.

23. When he was hired, neither UCSD nor Local 2010 informed Jackson that he had the option to refrain from joining Local 2010.

24. When he was hired, Jackson thought he was required to join Local 2010 as a condition of his employment.

25. Given that Jackson believed he had no choice in the matter, Jackson joined Local 2010 at the start of his employment.

26. Jackson happened to learn of the *Janus* decision from a local radio program.

27. Subsequently, while in the UCSD Human Resources office to assist a student worker pick up a final paycheck, Jackson asked a Human Resources employee how he could resign from Local 2010.

28. The employee in the UCSD Human Resources office refused to speak to Jackson about resigning from Local 2010 or any aspects of union membership.

29. The employee in the UCSD Human Resources office advised Jackson to go to the union with his questions.

30. Jackson sent a letter dated January 23, 2019, to Local 2010 explaining that he did not affirmatively consent to pay dues or fees to Local 2010, terminating his union membership, directing Local 2010 to discontinue its dues deduction, and directing Local 2010 to refund all fees deducted since the *Janus* decision was issued. Exhibit B.

31. Local 2010 replied in a letter dated February 7, 2019, asserting that Jackson would have to continue paying dues pursuant to a Membership Application that he signed prior to the *Janus* decision. Exhibit C. Attached to that letter (and Exhibit C) was a Membership Application allegedly signed by Jackson.

32. Jackson denies that his signature is on the Membership Application in Exhibit C. A copy of Jackson's signature is attached to this complaint as Exhibit D.

33. On March 20, 2019, Jackson sent a letter to UCSD requesting that it stop deducting union dues from his paycheck. Exhibit E.

34. In an email dated March 28, 2019, UCSD replied that, per the Gag Rule statutes, Jackson needed to communicate directly with the Union with regard to his union membership and dues. Exhibit F.

35. Local 2010 refused Jackson's request to cancel his union membership and stop making deductions from his paycheck.

36. Local 2010 has not asked the Controller to cancel or change the payroll deductions it receives from Jackson.

37. Local 2010 will not ask the Controller to cancel or change the payroll deductions it receives from Jackson unless and until Jackson makes a written request within 30 days of the collective bargaining agreement's end date of March 31, 2022.

38. The Controller has deducted union dues of $23.98 from Jackson's bi-weekly paychecks since he began employment in 2013 and remitted those dues to Local 2010.

39. Jackson pays approximately $575 in union dues against his will annually.

40. The Controller will continue to deduct union dues from Jackson's paychecks and remit those dues to Local 2010 until Local 2010 notifies the Controller to stop. ///

### 2. Tory Smith

41. Smith works on the Special Events Parking staff at UCSD.

42. Smith is responsible for making parking signs for special events on campus, giving guests directions, and directing traffic.

43. When he was hired in April 2006, neither UCSD nor Local 2010 informed Smith that he had the option to refrain from joining Local 2010.

44. When he was hired, Smith thought that joining Local 2010 was required.

45. Given that Smith believed he had no choice in the matter, he joined Local 2010 at the start of his employment.

46. Smith happened to learn of the *Janus* decision from a television news program several months after the case was decided.

47. Smith sent a letter to Local 2010 dated May 24, 2019, explaining that he did not affirmatively consent to pay dues or fees to Local 2010, terminating his union membership, directing Local 2010 to discontinue its dues deduction, and directing Local 2010 to refund all fees deducted since the *Janus* decision was issued. Exhibit G.

48. Local 2010 replied in a letter dated February 27, 2019, asserting that Smith would have to continue paying dues pursuant to a Membership Application that he signed prior to the *Janus* decision. Exhibit H.

49. On May 24, 2019, Smith sent a letter to UCSD informing UCSD that he had terminated his union membership and that previous dues authorizations signed by him were invalid, and that UCSD was no longer authorized to deduct dues from his paycheck. Exhibit I.

50. UCSD never responded to Smith's demand that they stop withdrawing dues from his paychecks.

51. Local 2010 refused Smith's request to cancel his union membership and stop making deductions from his paycheck.

52. Local 2010 has not asked the Controller to cancel or change the payroll deductions it receives from Smith.

///

53. Local 2010 will not ask the Controller to cancel or change the payroll deductions it receives from Smith unless and until Smith makes a written request within 30 days of the collective bargaining agreement's end date of March 31, 2022.

54. The Controller has deducted union dues of $24.92 from Smith's bi-weekly paychecks since he began employment in 2006 and remitted those dues to Local 2010.

55. Smith pays approximately $600 in union dues against his will annually.

56. The Controller will continue to deduct union dues from Smith's paychecks and remit those dues to Local 2010 until Local 2010 notifies the Controller to stop.

**D. Impact of SB 866 Gag Rule Statutes**

57. UCSD has adopted and implemented a policy of refusing to engage in any discussion whatsoever with its employees about union membership or union dues. *See, e.g.,* Exhibit F.

58. UCSD does not inform its employees that they have a constitutional right to work without joining the union.

59. UCSD does not inform its employees that they have a constitutional right to resign from the union while maintaining their employment with UCSD.

60. UCSD refers all employee questions related to union membership and dues to the union that represents the inquiring employees.

61. Local 2010 does not inform workers within its bargaining unit that they have a constitutional right to work without joining the union.

62. Local 2010 does not inform workers within its bargaining unit that they have a constitutional right to choose to resign their union membership while maintaining their employment with UCSD.

63. Local 2010 considers any communication between UCSD and its employees regarding union membership and dues to be an act of "deterring" or "discouraging" workers from "becoming or remaining in an employee organization" in violation of Cal. Gov't Code section 3550.

64. UCSD believes it would violate Cal. Gov't Code section 3550's prohibition of "deterring" or "discouraging" workers from "becoming or remaining in an employee organization"

///

if it advises employees that they have a constitutional right to choose whether or not to join or pay dues to a union.

65. UCSD does not permit any organizations other than an "employee organization" (union) to use UCSD's employee contact information to communicate with employees about their constitutional rights related to union membership and dues.

66. UCSD does not permit any organizations other than an "employee organization" (union) to meet with UCSD employees on campus or at other UCSD-owned or USCD-controlled property to advise them of their constitutional rights related to union membership and dues.

67. UCSD has not sent any "mass communication" as defined in Cal. Gov't Code section 3553(e) to its employees advising them that they have a constitutional right to choose whether or not to join or pay dues to Local 2010.

68. Local 2010 has not sent any "mass communication" as defined in Cal. Gov't Code section 3553(e) to UCSD employees advising them that they have a constitutional right to choose whether or not to join or pay dues to the Union.

69. Neither the Public Employment Relations Board nor the California Department of Human Relations has drafted a "communication concerning public employee rights" related to workers' rights to joint or pay dues to a union (*see* Cal Gov't Code section 3553(d)), and therefore, UCSD has not distributed any such communication to its employees.

## COUNT I
### Defendants Violated Plaintiffs' Rights to Free Speech and Freedom of Association Protected By the First Amendment of the United States Constitution.

70. The allegations contained in all preceding paragraphs are incorporated herein by reference.

71. The First Amendment to the United States Constitution provides: "Congress shall make no law . . . abridging the freedom of speech."

72. The Fourteenth Amendment to the United States Constitution incorporates the protection of the First Amendment against the States, providing: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall

1   any State deprive any person of life, liberty, or property, without due process of law; nor deny to
2   any person within its jurisdiction the equal protection of the laws."

3   73. By requiring Plaintiffs to make financial contributions in support of Local 2010,
4   Defendants, through their agreements and actions, are violating Plaintiffs' rights under the First
5   and Fourteenth Amendments to the United States Constitution.

6   74. By requiring Plaintiffs, who have resigned their union memberships, to take additional
7   steps to cease being subject to compelled financial contributions in support of any union (i.e., an
8   "opt-out" requirement), Defendants are violating the Plaintiffs' rights under the First and
9   Fourteenth Amendments to the United States Constitution.

10  75. Requiring a government employee to pay money to a union violates that employee's
11  First Amendment rights to free speech and freedom of association unless the employee
12  "affirmatively consents" to waive his or her rights. *Janus*, 138 S. Ct. at 2486. Such a waiver must
13  be "freely given and shown by 'clear and compelling' evidence." *Id*.

14  76. The actions of Defendants constitute a violation of Plaintiffs' First Amendment rights
15  to free speech and freedom of association to not join or financially support a union without their
16  affirmative consent.

17  77. Plaintiffs did not provide affirmative consent to Defendants to deduct dues from their
18  paychecks from the date that they joined the union until June 27, 2018 (the date the *Janus* decision
19  was issued), because unconstitutional agency shop provisions of the Agreement prohibit them from
20  exercising the option of paying nothing to the union as a non-member.

21  78. Plaintiffs' purported "consent" to dues collection via a checkoff card collected prior to
22  the *Janus* decision was not "freely given" because it was given based on an unconstitutional choice
23  of either union membership or the payment of union agency fees without the benefit of
24  membership. *Janus*, 138 S. Ct. at 2486.

25  79. If Plaintiffs had a choice between paying union dues and being a member of the union
26  or paying nothing as a non-member, they would have chosen to pay nothing as a non-member.
27  Accordingly, Plaintiffs' consent was compelled by the enforcement of unconstitutional agency
28  shop requirements, and not freely given.

80. Plaintiffs have no adequate remedy at law.

81. The controversy between Defendants and Plaintiffs is a definite and concrete dispute concerning the legal relations of parties with adverse legal interests.

82. The dispute is real and substantial, as Local 2010 is continuing to collect fees each pay period from Plaintiffs' paychecks.

83. The declaratory relief sought is not based on a hypothetical state of facts, nor would it amount to a mere advisory opinion, as the parties dispute the legality of ongoing seizure of a portion of the Plaintiffs' paychecks.

84. As a result of the foregoing, an actual and justiciable controversy exists between the Plaintiffs and the Defendants regarding their respective legal rights, and the matter is ripe for review.

## COUNT II
### The SB 866 Gag Rule Statutes Violate Plaintiffs' First Amendment Rights to Receive Information Necessary to Decide Whether to Support a Union.

85. The allegations contained in all preceding paragraphs are incorporated herein by reference.

86. Every public employee has a fundamental First Amendment right to refrain from providing monetary support to a union against his or her will.

87. The First Amendment does not allow any payment or fee deduction from a public employee's paycheck, or any attempt to collect such payment, unless the employee clearly and affirmatively consents.

88. By agreeing to provide monetary support to a union through clear affirmative consent, public employees waive their First Amendment rights.

89. The ability to provide clear and affirmative consent depends on an employee having sufficient information as to his or her rights and obligations under the First Amendment and *Janus* decision.

90. The First Amendment protects the right to receive information wholly separate from the coordinate right to convey information.

*///*

91. Because *Janus* requires a public employer to secure an employee's affirmative consent for all union paycheck deductions, UCSD has a First Amendment obligation to provide sufficient information to employees about their *Janus* rights.

92. The Gag Rule statutes violate Plaintiffs' First Amendment right to receive the information necessary to make the clear and affirmative waiver to financially support a union, as required by *Janus*.

93. There is no legitimate, much less compelling, state interest in restraining the conveyance of information about employees' constitutional rights.

94. Plaintiffs have no adequate remedy at law.

95. The controversy between Defendants and Plaintiffs is a definite and concrete dispute concerning the legal relations of parties with adverse legal interests.

96. The dispute is real and substantial, as Plaintiffs have a First Amendment right to receive information necessary to make informed decisions about whether to give financial support to a union.

97. The declaratory relief sought is not based on a hypothetical state of facts, nor would it amount to a mere advisory opinion, as the parties dispute the constitutionality of the SB 866 Gag Rule statutes.

98. As a result of the foregoing, an actual and justiciable controversy exists between the Plaintiffs and the Defendants regarding their respective legal rights, and the matter is ripe for review.

**COUNT III**
**The SB 866 Gag Rule Statutes Unconstitutionally Burden Plaintiffs' First Amendment Right to Refrain from Supporting a Union.**

99. The allegations contained in all preceding paragraphs are incorporated herein by reference.

100. Every public employee has a fundamental First Amendment right to refrain from providing monetary support to a union against his or her will.

///

///

101. The First Amendment does not allow any payment or fee deduction from a public employee's paycheck, or any attempt to collect such payment, unless the employee clearly and affirmatively consents.

102. By agreeing to provide monetary support to a union through clear affirmative consent, public employees waive their First Amendment rights.

103. This waiver must be "freely given."

104. Public employees' First Amendment waivers cannot be "freely given" unless they first know that they possess and may freely exercise that right.

105. Under the Gag Rule statutes, public employees are prohibited from speaking to their own employers about their First Amendment rights recognized by the *Janus* decision and their ability to exercise those rights.

106. This communicative prohibition unconstitutionally burdens public employees' ability to exercise their First Amendment right to refuse to financially support a union as recognized by the *Janus* decision.

107. There is no legitimate, much less compelling, state interest in burdening public employees' ability to exercise their First Amendment rights.

108. Public employees have a right to refrain from supporting a union without suffering the burdens on the exercise of their First Amendment rights imposed by the Gag Rule statutes.

109. Plaintiffs have no adequate remedy at law.

110. The controversy between Defendants and Plaintiffs is a definite and concrete dispute concerning the legal relations of parties with adverse legal interests.

111. The dispute is real and substantial, as Plaintiffs' First Amendment rights as recognized by the *Janus* decision are significantly burdened.

112. The declaratory relief sought is not based on a hypothetical state of facts, nor would it amount to a mere advisory opinion, as the parties dispute the legality of the Gag Rule statutes.

113. As a result of the foregoing, an actual and justiciable controversy exists between the Plaintiffs and the Defendants regarding their respective legal rights, and the matter is ripe for review.

**Count IV**
**The SB 866 Gag Rule Statutes Violate the Due Process Clause of the**
**Fourteenth Amendment. 42 U.S.C. § 1983 (Procedural Due Process).**

114. The allegations contained in all preceding paragraphs are incorporated herein by reference.

115. Every public employee has a fundamental First Amendment right to refrain from providing monetary support to a union against his or her will.

116. The First Amendment does not allow any payment or fee deduction from a public employee's paycheck, or any attempt to collect such payment, unless the employee clearly and affirmatively consents.

117. By agreeing to provide monetary support to a union through clear affirmative consent, public employees waive their First Amendment rights.

118. Public employees' waiver of First Amendment rights cannot be presumed by public employers.

119. Rather, the waiver must be shown by "clear and compelling evidence."

120. The evidence must unambiguously demonstrate that the waiver was the free, voluntary, intelligent, and intentional relinquishment of a known right.

121. Unless it can be shown by clear and compelling evidence that a public employee has clearly and affirmatively waived his or her First Amendment right to refuse providing monetary support for a union, no money may be deducted from his or her paycheck for that purpose.

122. Any money deducted without meeting this standard violates the employee's right to procedural due process.

123. The Gag Rule statutes prohibit communication between an employee and his or her employer regarding the decision to waive his or her First Amendment rights.

124. Instead, public employers are required to rely on the assertions of the union regarding employee deductions preferences.

125. This reliance on third party unions to deduce whether a public employee has waived his or her First Amendment rights cannot meet the standard for clear and compelling evidence required by *Janus*.

126. Money deducted in reliance on union assertions regarding employee waivers as required by the Gag Rule statutes violates public employees' rights to procedural due process.

127. Defendants have no legitimate, much less compelling, reason to withdraw money from public employees' paychecks without securing their clear and affirmative consent through clear and compelling evidence as required by *Janus*.

128. Public employees have a right to not have union dues deducted from their paychecks unless they provide clear and affirmative consent through clear and compelling evidence as required by *Janus*.

129. Plaintiffs have no adequate remedy at law.

130. The controversy between Defendants and Plaintiffs is a definite and concrete dispute concerning the legal relations of parties with adverse legal interests.

131. The dispute is real and substantial, as Plaintiffs are continuously having money deducted against their will and given to a union they do not clearly and affirmatively consent to support through clear and compelling evidence as required by *Janus*.

132. The declaratory relief sought is not based on a hypothetical state of facts, nor would it amount to a mere advisory opinion, as the parties dispute the legality of the Gag Rule statutes.

133. As a result of the foregoing, an actual and justiciable controversy exists between the Plaintiffs and the Defendants regarding their respective legal rights, and the matter is ripe for review.

### Count V
### The SB 866 Gag Rule Statutes Violate the Due Process Clause of the Fourteenth Amendment. 42 U.S.C. § 1983 (Substantive Due Process).

134. The allegations contained in all preceding paragraphs are incorporated herein by reference.

135. Every public employee has a fundamental First Amendment right to refrain from providing monetary support to a union against his or her will.

136. The First Amendment does not allow any payment or fee deduction from a public employee's paycheck, or any attempt to collect such payment, unless the employee clearly and affirmatively consents.

137. By agreeing to provide monetary support to a union through clear affirmative consent, public employees waive their First Amendment rights.

138. The sole means provided by law for public employees to obtain information regarding their First Amendment rights recognized by *Janus* requires them to consult a private third-party (the union).

139. Public employee unions have no incentive to provide information that might result in fewer dues-paying members and no obligation to convey it to current and potential members.

140. Public employee unions have a financial incentive to represent to public employers that public employees have provided the clear and affirmative consent required by *Janus*.

141. The state has no legitimate, let alone compelling, interest in burdening or discouraging employees' exercise of their First Amendment rights to terminate support for a union.

142. By requiring employees to obtain information about terminating support from a private third-party union with a financial interest in maintaining that support, the Gag Rule statutes create a conflict of interest allowing the Union to exploit the Gag Rule statutes at the expense of public employees' First Amendment rights.

143. The Gag Rule statutes thus have the purpose and effect of arbitrarily limiting public employees' access to information about their First Amendment rights to terminate support for a union.

144. Even if the Gag Rule statutes did have a legitimate or compelling purpose, they are not narrowly tailored to support that purpose.

145. The Gag Rule statutes thus create a fundamentally unfair, biased procedure for exercising public employees' First Amendment rights to terminate support for a union that violates public employees' rights to substantive due process.

146. Public employees have a substantive right to exercise their First Amendment rights without suffering the conflict of interest imposed by designating the third-party union as the sole point of contact.

147. Plaintiffs have no adequate remedy at law.

///

148. The controversy between Defendants and Plaintiffs is a definite and concrete dispute concerning the legal relations of parties with adverse legal interests.

149. The dispute is real and substantial, as Plaintiffs' First Amendment rights as recognized by the *Janus* decision are significantly burdened.

150. The declaratory relief sought is not based on a hypothetical state of facts, nor would it amount to a mere advisory opinion, as the parties dispute the constitutionality of the Gag Rule statutes.

151. As a result of the foregoing, an actual and justiciable controversy exists between the Plaintiffs and the Defendants regarding their respective legal rights, and the matter is ripe for review.

### PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court:

a.      Enter a judgment declaring that Defendants' collective bargaining agreement, entered under color of and pursuant to California law, violates Plaintiffs' free speech rights by limiting the ability of Plaintiffs to revoke their union membership and the authorization to withhold union dues from their paychecks to a window of time without affirmative consent;

b.      Enter a judgment declaring that Cal. Gov't Code sections 1157.12, 3513(i), 3515, 3515.5, and 3583 violate Plaintiffs' free speech rights to the extent that they limit the ability of Plaintiffs to revoke their union membership and the authorization to withhold union dues from their paychecks to a window of time without affirmative consent;

c.      Enter a judgment declaring that membership cards signed by the Plaintiffs—when such authorization was based on an unconstitutional choice between paying the union as a member or paying the union as a non-member—does not meet the standard for affirmative consent required to waive First Amendment rights announced recognized in *Janus*;

d.      Enter a judgment declaring that Defendants' practice of withholding union dues from Plaintiffs' paychecks in the absence of affirmative consent is unconstitutional;

e.      Enjoin Local 2010 to allow Plaintiffs to resign their union membership immediately, retroactive to the date of their letters announcing their resignation;

f.      Enjoin the Controller from continuing to deduct, and enjoin Local 2010 from accepting, dues from Plaintiffs' paychecks, unless they first provide freely-given consent to such deductions;

g.      Award monetary damages against Local 2010 for all union dues collected from Plaintiffs in the absence of valid, freely-given affirmative consent;

h.      Enter a judgment declaring that the SB 866 Gag Rule statutes are unconstitutional under the First and Fourteenth Amendments;

i.      Enjoin the Attorney General from enforcing the SB 866 Gag Rule statutes;

j.      Enjoin the Controller from deducting any monies from any public employee's paychecks for the benefit of employee organizations without the written consent of the public employee;

k.      Award Plaintiffs their costs and attorneys' fees under 42 U.S.C. § 1988; and

l.      Award Plaintiffs any further relief to which they may be entitled and such other relief as this Court may deem just and proper.

Dated: July 30, 2019.                    Respectfully Submitted,

/s/ Deborah J. La Fetra
DEBORAH J. LA FETRA
TIMOTHY R. SNOWBALL
Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Phone: 916-419-7111
dlafetra@pacificlegal.org

/s/ Jeffrey M. Schawb
JEFFREY M. SCHWAB
JAMES J. MCQUAID
Liberty Justice Center
190 South LaSalle Street
Suite 1500
Chicago, Illinois 60603
Phone: 312-263-7668
jschwab@libertyjusticecenter.org