1
2
3
4

ANDREW H. BAKER, SBN 104197
BEESON, TAYER & BODINE, APC
483 Ninth Street, 2nd Floor
Oakland, CA  94607
Telephone:  (510) 625-9700
Facsimile:  (510) 625-8275
Email:       abaker@beesontayer.com

5
6

Attorneys for Defendant
Teamsters Local 2010

7

8

## UNITED STATES DISTRICT COURT

9

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

11
12
13

MICHAEL JACKSON and TORY SMITH,

                          Plaintiffs,

        v.

14
15
16
17
18
19

JANET NAPOLITANO, in her official capacity as President of the University of California; TEAMSTERS LOCAL 2010; XAVIER BECERRA, in his official capacity as Attorney General of the State of California; and BETTY T. YEE, in her official capacity as Controller of the State of California,

                          Defendants.

Case No. 3:19-CV-1427 LAB BGS

**TEAMSTERS LOCAL 2010'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

Hearing Date:     November 12, 2019
Hearing Time:     11:30 a.m.
Courtroom:        14-a
Judge:            Hon. Larry Alan Burns

Complaint Filed:  July 30, 2019
Trial Date:       None set

20
21
22
23
24
25
26
27
28

MEMO OF P'S & A'S ISO MOTION TO DISMISS COMPLAINT
Case No. 3:19-CV-1427 LAB BGS

840111_2

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................3

INTRODUCTION ...........................................................................7

STATEMENT OF RELEVANT FACTS ..............................................7

ARGUMENT.................................................................................9

I.     Count I Fails to State a Cause of Action Against the Union ...........9

       A.     Count I Fails to State a Claim for Violation of Section1983.................10

              1.     Section 1983 requires state action ...............................10

              2.     The state's ministerial processing of voluntary dues deductions does not transform the Union's private dues authorization agreements into state action...................................12

              3.     Plaintiffs' subjective belief that Union dues membership is mandatory does not change the analysis.....................................14

              4.     That Plaintiff Jackson denies signing the 2016 membership application does not cause a different result ...............................16

       B.     Plaintiffs Have No Viable Claim for Dues Collected Prior to *Janus* .....19

              1.     *Janus* does not apply to members or member dues.....................19

              2.     Plaintiffs' claims for refund of pre-*Janus* dues are time barred ...20

              3.     *Janus* has no retroactive application...........................................21

       C.     Plaintiff Smith Remains Bound By the Terms of His 2016 Membership Agreement........................................................................22

II.    Count II Fails to State a Cause of Action ..............................25

III.   Count III Fails to State a Cause of Action ..............................27

IV.    Counts IV and V Fail to State a Cause of Action ......................28

CONCLUSION ..............................................................................31

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abood v. Detroit Board of Education,*
   431 U.S. 209 (1977) ...................................................................10, 12

*Anderson v. Service Empl. Int'l Union Local 503,*
   2019 WL 4246688 (D. Or. Sept. 4, 2019)......................................22

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ........................................................................ 9

*Babb v. California Teachers Ass'n,*
   2019 WL 2022222 (C.D. Cal. May 8, 2019)...........................20, 22

*Bain v. CTA,*
   891 F.3d 1206 (9th Cir. 2018).................................................*passim*

*Belgau v. Inslee,*
   359 F. Supp. 3d 1000 (W.D. Wash. 2019) .............. 15, 20, 23, 24

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ........................................................................ 9

*Bermudez v. SEIU Local 5,*
   2019 WL 1615414 (N.D. Cal. April 16, 2019).............................21, 22

*Blum v. Yaretsky,*
   457 U.S. 991 (1982) .................................................................13, 19

*Carey v. Inslee,*
   364 F.Supp.3d 1220 (W.D. Wash. 2019) ....................................21

*Civil Rights Cases,*
   109 U.S. 3 (1883) ..........................................................................15

*Cohen v. Cowles Media Co.,*
   501 U.S. 663 (1991) .................................................................13, 23

*Collins v. Womancare,*
   878 F.2d 1145 (9th Cir. 1989)............................... 11, 15, 17, 18

*Cook v. Brown,*
   364 F. Supp. 3d 1184 (D. Or. 2019).............................................21

*Cooley v. Cal. Statewide Law Enforcement Ass'n,*
   385 F. Supp. 3d 1077 (E.D. Cal. 2019) ................. 15, 20, 22, 23

*Cooley v. Cal. Statewide Law Enforcement Ass'n,*
   2019 WL 331170 (E.D. Cal. Jan. 25, 2019) ...........................20, 24

*Crockett v. NEA-Alaska,*
   367 F. Supp. 3d 996 (March 14, 2019) ...............................19, 20, 21

*Danielson v. AFSCME Council 28,*
  340 F.Supp.3d 1083 (W.D. Wash. 2018) ................................................21

*Diamond v. Pa. State Educ. Ass'n,*
  2019 WL 2929875 (W.D. Pa. July 8, 2019) ...........................................22

*Edwards v. Marin Park, Inc.,*
  356 F.3d 1058 (9th Cir. 2004)............................................................... 9

*Farrell v. IAFF,*
  781 F. Supp.647 (N.D. Cal. 1992) .............................................12, 14, 20

*Fisk v. Inslee,*
  2017 WL 4619223 (W.D. Wash. Oct. 16, 2017)................................23, 24

*Fisk v. Inslee,*
  2018 WL 6620080 (9th Cir. Dec. 17, 2018)..........................................23

*Hallinan v. Fraternal Order of Police, Chicago Lodge No. 7,*
  570 F.3d 811 (7th Cir. 2009) ...............................................................18

*Hassett v. Lemay Bank & Trust Co.,*
  851 F.2d 1127 (8th Cir. 1988)..............................................................17

*Hough v. SEIU Local 521,*
  2019 WL 1785414 (N.D. Cal. Apr. 16, 2019).........................................21

*Hudson v. Palmer,*
  468 U.S. 517 (1984) ...........................................................................30

*Janus v. AFSCME, Council* 31,
  138 S. Ct. 2448 (2018)..................................................................*passim*

*Jones v. Blanas,*
  393 F.3d 918 (9th Cir. 2004) ...............................................................21

*Kidwell v. Transp. Commc'ns In'tl Union,*
  946 F.2d 283 (4th Cir. 1991) ..........................................................12, 20

*Knox v. Westley,* No. 05-2198-MCE-KJM,
  2006 WL 2374763 (E.D. Cal. Aug. 16, 2006)....................................13, 19

*Leek v. Washington Unified Sch. Dist.,*
  124 Cal.App.3d 43 (1981) ...................................................................26

*Lewis v. Cont'l Bank Corp.,*
  494 U.S. 472 (1990) ...........................................................................27

*Link v. Antioch Unified Sch. Dist.,*
  142 Cal. App. 3d 765 (1983) ...............................................................26

*Lugar v. Edmondson Oil Co.,*
  457 U.S. 922 (1982) ....................................................................*passim*

4

*Minn. State Bd. for Cmty. Colls. v. Knight*,
  465 U.S. 271 (1984) ..................................................................25

*Monsanto Co. v. Geertson Seed Farms*,
  561 U.S. 139 (2010) ..................................................................27

*Mooney v. Illinois Educ. Ass'n*,
  2019 WL 1575186 (C.D. Ill. Apr. 11, 2019) ................................21

*NLRB v. U.S. Postal Serv.*,
  833 F.2d 1195 (6th Cir. 1987) ...................................................24

*NLRB v. U.S. Postal Serv.*,
  827 F.2d 548 (9th Cir. 1987) .....................................................24

*O'Callaghan v. Regents of the Univ. of Cal.*,
  2019 WL 2635585 (C.D. Cal. June 10, 2019) ..............................19

*Ohno v. Yasuma*,
  723 F.3d 984 (9th Cir. 2013) ...................................... 10, 11, 15, 18

*Ouzts v. Maryland Nat'l Ins. Co.*,
  505 F.2d 547 (9th Cir. 1974) .....................................................17

*Renken v. Compton City Sch. Dist.*,
  207 Cal. App. 2d 106 (1962) .....................................................30

*Roudybush v. Zabel*,
  813 F.2d 173 (8th Cir. 1987) .....................................................17

*Seager v. United Teachers Los Angeles*,
  2019 WL 3822001 (C.D. Cal. Aug. 14, 2019) ..............................22

*Smith v. Arkansas State Highway Employees*,
  441 U.S. 463 (1979) ..................................................................25

*Smith v. Bieker*,
  2019 WL 2476679 (N.D. Cal. June 13, 2019) ..........................19, 23

*Smith v. Superior Court*,
  2018 WL 6072806 (N.D. Cal. Nov. 16, 2018) ......................20, 23, 24

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ..........................................................26, 27

*Tsao v. Desert Palace, Inc.*,
  698 F.3d 1128 (9th Cir. 2012) ...................................................12

*United Steelworkers of America, Local 4671 (National Oil Well, Inc.)*
  302 NLRB 367 (1991) ...............................................................24

*Winterland Concessions Co. v. Trela*,
  735 F.2d 257 (7th Cir. 1984) .....................................................17

840111_2

## Statutes

Cal. Gov. Code § 1153.................................................................*passim*
Cal. Gov. Code § 1157.1.......................................................................30
Cal. Gov. Code § 1157.12.........................................................27, 29, 30
Cal. Gov. Code § 1157.12(a)................................................................30
Cal. Gov. Code § 1157.12(b)................................................................27
Cal. Gov. Code § 1157.3.......................................................................30
Cal. Gov. Code § 3502...........................................................................17
Cal. Gov. Code § 3550.........................................................25, 26, 29
Cal. Gov. Code § 3563...........................................................................15
Cal. Gov. Code § 3565..................................................................14, 15
Cal. Gov. Code § 3571.1................................................................14, 17
Cal. Gov. Code § 3571.1(b)..................................................................14
U.S. Const. amend. I..............................................................*passim*
U.S. Const. amend. I, §1983................................................*passim*
U.S. Const. amend. XIV.......................................................9, 19, 28
U.S. Const. art. III...............................................................................26

## Other Authorities

Senate Bill 866.......................................................................*passim*

## Rules

Cal. Civ. Code Rule 12(b)(6) ....................................................... 9

**INTRODUCTION**

Plaintiffs bring claims against their employer, the University of California (herein "the University"), the Union that represents them in that employment, Teamsters Local 2010 (herein "Local 2010" or "the Union"), and the Attorney General and Controller of California.  The Complaint contains five causes of action.  Count I alleges that Defendants have violated Plaintiffs' Constitutional rights by "requiring" them to pay dues to the Union.  Counts II and III seek a declaratory order declaring unspecified provisions of California's 2018 Senate Bill 866 (herein "SB 866") to be invalid as unconstitutionally interfering with Plaintiffs' alleged right to receive information from the University and their right to speak to the University.  And Counts IV and V seek an order declaring unspecified provisions of SB 866 invalid as unconstitutionally depriving Plaintiffs of procedural and substantive due process.

We show below that Plaintiffs lack standing to bring the claims found in Count I, that the U.S. Supreme Court's decision in *Janus v. AFSCME, Council* 31, 138 S. Ct. 2448 (2018) does not entitle Plaintiffs to a retroactive refund of fees paid Local 2010, and that *Janus* does not entitle Plaintiff Smith to renege on his contractual obligations to the Union.  We show also that the Complaint fails to state any cause of action to invalidate any portion of SB 866.

**STATEMENT OF RELEVANT FACTS**

The following facts relevant to this Motion are alleged in the Complaint and are assumed to be true solely for purposes of this Motion.

Plaintiffs Michael Jackson and Tory Smith  are both employed by the University of California San Diego (herein "the University").  Jackson began his employment with the University in 2013, and Smith began in 2006.  (Compl. ¶¶ 21, 41, 43.)  Both Plaintiffs joined Local 2010 as members when they were hired by the University. (Compl. ¶¶ 25, 45.)  Both Plaintiffs' "thought" that they had to join the Union as a condition of employment, although no one ever so advised them.  (Compl. ¶¶ 24, 44.)

On an unspecified date in 2018, Jackson asked an unidentified University "Human Resources employee" how he could resign from the Union. That employee "refused to speak to Jackson about resigning from Local 2010 or any aspects of union membership," and instead "advised Jackson to go to the union with his questions." (Compl. ¶¶ 27-29.) Jackson then, by letter dated January 23, 2019, advised the Union that he wished to terminate his membership in Local 2010, wanted the Union to discontinue University deduction of dues from his paychecks, and wanted the Union to refund all "fees" deducted since the Supreme Court issued its decision in *Janus*. (Compl. ¶ 30.) The Union replied by letter dated February 7, 2019. In that letter, Local 2010 advised that Jackson's resignation from Union membership had been processed, but also pointed out that Jackson remained bound by his fee-deduction authorization dated July 7, 2016, which obligates him to continue paying fees to the Union through payroll deduction until the expiration of the current collective bargaining agreement ("CBA") with the University. (Compl. ¶ 31, Exh. C.)

Jackson denies that he signed the July 7, 2016, fee-deduction authorization, although he does not allege that he so advised the Union in response to the Union's February 7, 2019 letter. (Compl. ¶ 32.)

By letter dated March 20, 2019, Jackson asked the University to stop deducting fees from his paycheck. The University responded by email on March 28, 2019, "Due to a new law passed on June 27, 2018 (Senate Bill 866) all inquiries regarding your status as Union Member, Fees Payer or Conscientious objector must be referred to your Union." (Compl. ¶¶ 33-34, Exh. F.)

Smith by letter dated February 19, 2019, advised the Union that he wished to terminate his membership in Local 2010, wanted the Union to discontinue University deduction of dues from his paychecks, and wanted the Union to refund all "fees" deducted since the Supreme Court issued its decision in *Janus*. (Compl. ¶ 47, Exh. G.) The Union replied by letter dated February 27, 2019. In that letter, Local 2010 advised that Smith's resignation from Union membership had been processed, but also pointed

out that Jackson remained bound by his fee-deduction authorization dated April 8, 2016.  That authorization, like that the Union referred to in response to Plaintiff Jackson's tender of resignation, obligates Smith to continue paying fees to the Union through payroll deduction until the expiration of the current CBA with the University. (Compl. ¶ 48, Exh. H.)

By letter dated May 24, 2019, Smith asked the University to stop deducting fees from his paycheck.  The University did not reply.  (Compl. ¶¶ 49-50.)

## ARGUMENT

"To survive a motion to dismiss" under Rule 12(b)(6), the allegations of the complaint, "accepted as true," must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

A motion to dismiss should be granted without leave to amend pursuant to Rule 12(b)(6) "'if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief, construing the complaint in the light most favorable to the plaintiff.'"  *Bain v. CTA,* 891 F.3d 1206, 1211 (9th Cir. 2018) (quoting *Edwards v. Marin Park, Inc.,* 356 F.3d 1058, 1061 (9th Cir. 2004) (some internal quotation marks and citations omitted)).

## I.   Count I Fails to State a Cause of Action Against the Union

Count I of the Complaint rather vaguely alleges that the Union's collection of dues and fees from Plaintiffs' violates their rights under the First Amendment.  The claims contained here include:  (1) the Union is violating Plaintiffs' First and Fourteenth Amendment rights by "requiring" them to pay dues (Compl. ¶ 73); (2) the Union is violating Plaintiffs' First and Fourteenth Amendment rights by requiring them to "take additional steps" after resignation from the Union in order to cease continued payment of fees to the Union (Compl. ¶ 74); and (3) the Union has violated, and is

1  violating, Plaintiffs' First Amendment rights by collecting dues and fees from

2  Plaintiffs without Plaintiffs providing "affirmative consent" (Compl. ¶¶ 75-79).  None

3  of these claims, as pleaded in the Count I, states a cause of action against the Union.

4  **A.    Count I Fails to State a Claim for Violation of Section 1983**

5  The First Amendment comes into play only if there is state action and that is not

6  what Plaintiffs challenge here.

7  To be sure, the First Amendment provides a right not to be compelled as a

8  condition of public employment to join a union or to agree to pay its membership dues

9  – that right was recognized in *Abood v. Detroit Board of Education,* 431 U.S. 209

10  (1977), long before the Supreme Court's decision in *Janus v. AFSCME Council 31.*

11  But that right is not at issue here.  Plaintiffs do not nor could they allege they were

12  compelled *by their public employer* to become members of the Union.

13  Thus, Plaintiffs challenge *not* state compulsion but instead only the terms of

14  their private voluntary membership agreements with the Union and the State's

15  ministerial enforcement of those agreements, neither of which constitutes "state

16  action" for purposes of the First Amendment and section 1983.  The membership

17  agreements involved here are those Plaintiff Smith entered into in 2006 (Compl. ¶¶ 43-

18  45) and in 2016 (Comp. ¶ 48, Exh. H), and that Plaintiff Jackson entered into in 2013

19  (Compl. ¶¶ 21, 24).  (Jackson's 2016 membership application, which he denies having

20  signed, is addressed separately below.)

21  1.    Section 1983 requires state action

22  "'[M]ost rights secured by the Constitution are protected only against

23  infringement by governments.'"  *Ohno v. Yasuma,* 723 F.3d 984, 993 (9th Cir. 2013)

24  (quoting *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 936-37 (1982)). For that reason,

25  a plaintiff seeking to challenge the conduct of a private party under section 1983 must

26  show that "'the conduct allegedly causing the deprivation of a federal right [is] fairly

27  attributable to the State,'" *i.e.* that the private party's conduct is "state action."  *Ohno,*

28  723 F.3d at 993 (quoting *Lugar,* 457 U.S. at 936-37); *see also Bain v. California*

*Teachers Ass'n,* 156 F.Supp.3d 1142, 1149 (C.D. Cal. 2015) (same). If the action that plaintiffs challenge "is not so attributable, then there is no 'state action' and no violation" of the First Amendment. *Ohno,* 723 F.3d at 993.

"The Supreme Court has established a two-part test to determine whether a plaintiff states a §1983 claim against a private actor." *Bain,* 156 F.Supp.3d at 1149 n.6. The first test asks "'whether the claimed deprivation has resulted from the exercise of a right or privilege having its source in state authority.'" *Id.* (quoting *Lugar,* 457 U.S. at 939). The second asks whether, "'under the facts of this case, respondents, who are private parties, may be appropriately characterized as "state actors."'" *Id.* (quoting *Lugar,* 457 U.S. at 939). "Both elements under *Lugar* must be met for there to be state action." *Collins v. Womancare,* 878 F.2d 1145, 1151 (9th Cir. 1989) (citing *Lugar,* 457 U.S. at 937-39).

To satisfy the first prong, a plaintiff must show that "the deprivation of rights [was] 'caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.'" *Id.* (quoting *Lugar,* 457 U.S. at 937). "The second prong determines whether the party charged with the deprivation could be described in all fairness as a state actor." *Ohno,* 723 F.3d at 994. Courts in this Circuit apply four tests to determine whether the party can be described as a "state actor" under *Lugar:* "(1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test." *Bain,* 156 F.Supp.3d at 1150 (citing *Ohno,* 723 F.3d at 995). The Ninth Circuit has explained that the "most relevant" tests are the "public function" and "joint action tests," as these tests "largely subsume" the other two. *Ohno,* 723 F.3d at 995, 995 n.13. The "public function" test "treats private actors as state actors when they perform a task or exercise powers traditionally reserved to the government," while the "joint action" test "focuses on 'whether state officials and private parties have acted in concert in effecting a particular deprivation of

840111_2

1  constitutional rights.'"  *Ohno,* 723 F.3d at 996 (quoting *Tsao v. Desert Palace, Inc.,*

2  698 F.3d 1128, 1140 (9th Cir. 2012)).

3            2.    The state's ministerial processing of voluntary dues deductions
                   does not transform the Union's private dues authorization
4                  agreements into state action

5        Because Plaintiffs' joining the Union was *not* a condition of their public

6  employment, and because the state did not determine the terms of Plaintiffs' Union

7  membership agreements, those private contractual terms do not involve "state action"

8  subject to First Amendment scrutiny.  Indeed, courts applying the *Lugar* state-action

9  test have rejected section 1983 claims by voluntary union members challenging their

10 unions' membership rules and policies on the ground that such union conduct does not

11 result from an exercise of state authority, as required under the first prong of the *Lugar*

12 test.  *See, e.g., Kidwell v. Transp. Commc'ns In'tl Union,* 946 F.2d 283, 297-99 (4th

13 Cir. 1991); *Bain,* 156 F.Supp.3d at 1151-53; *Farrell v. IAFF,* 781 F. Supp.647, 649

14 (N.D. Cal. 1992).  As the Fourth Circuit explained, "Where the employee has a choice

15 of union membership and the employee chooses to join," neither the employee's

16 membership nor the payment of dues is "coerced" by the state, for "[t]he employee is a

17 union member voluntarily."  *Kidwell,* 946 F.2d at 292-93 (4th Cir. 1991); *cf. Farrell,*

18 781 F. Supp. at 649-50 (following *Kidwell* and rejecting section1983 claims brought

19 by public sector union members for lack of state action).

20       The *Bain* decision is also instructive: In *Bain,* four public sector union members

21 sued their union, alleging that by offering members-only benefits to dues-paying

22 members, the union had pressured the plaintiffs to join and thus violated the First

23 Amendment.  *Bain* rejected those claims, concluding that the terms of a voluntary

24 union membership agreement between a union and its public employee members do

25 not involve state action and thus are not subject to First Amendment challenge.  156

26 F.Supp.3d at 1147, 1152-53.  The court reasoned that, unlike in cases involving

27 compulsory agency fees like *Abood* (and *Janus*), the conduct the plaintiffs there

28 challenged (the union's offering of members-only benefits did not involve

1   "compulsion ... authorized by state law." *Id.* at 1152.  The plaintiffs were free to

2   choose whether or not to enter into a contractual agreement with the union, and the

3   plaintiffs could not "establish state action" based on the terms of their own voluntary

4   agreements.  *Id.* at 1153.  The same is true here.

5       As the Supreme Court has explained, moreover, "[t]hat the State responds to [a

6   private party's] actions by adjusting [its own conduct (here, by deducting dues)] does

7   not render it *responsible* for those actions."  *Blum v. Yaretsky,* 457 U.S. 991, 1005

8   (1982) (italics in original); *see also, e.g., Knox v. Westley,* No. 05-2198-MCE-KJM,

9   2006 WL 2374763, at *3-5 (E.D. Cal. Aug. 16, 2006) (union members could not

10  challenge public sector union dues increase under section 1983 because union

11  relationship with voluntary members was not state action).  The State Controller's

12  "ministerial obligation to deduct dues" authorized pursuant to Plaintiffs' voluntarily

13  entering into membership agreements with the Union "does not transform" the Union's

14  membership policies "into state actions."  *Bain v. CTA,* 2016 WL 6804921, at *7 (C.D.

15  Cal. May 2, 2016), *appeal dismissed as moot,* 891 F.3d 1206 (9th Cir. 2018).

16      These holdings are consistent with *Cohen v. Cowles Media Co.,* 501 U.S. 663

17  (1991), where the court did not conduct any constitutional "waiver" analysis to

18  determine whether the newspaper's promise to its source was enforceable.  There is no

19  First Amendment right to renege on otherwise enforceable obligations, so there was no

20  right that needed to be "waived."  Rather, the Court reasoned that the doctrine of

21  promissory estoppel simply "requires those who make certain kinds of promises to

22  keep them," any obligations created by that doctrine are "self-imposed," and the

23  application of promissory estoppel law therefore does not "offend the First

24  Amendment."  *Cohen,* 501 U.S. at 669-72. The same is true with respect to the

25  enforcement of Plaintiffs' dues authorizations.

26      The Supreme Court's reference in *Janus* to "waiving" First Amendment rights

27  does not require a different analysis. *Janus* did not involve the relationship between a

28  union and its voluntary members who affirmatively authorized dues deductions.

1   Rather, *Janus* involved state *compulsion* of non-members to pay union fees.  None of

2   the "waiver" cases cited in *Janus* involved the enforcement of obligations voluntarily

3   and affirmatively undertaken in agreements between private parties.

4

5           3.    <u>Plaintiffs' subjective belief that Union dues membership is mandatory does not change the analysis</u>

6        Plaintiffs also allege that, even if the Union did not fraudulently induce them to

7   agree to dues deduction, their agreements are nonetheless invalid because Plaintiffs

8   subjectively believed that union membership was mandatory.  That theory, too, fails

9   for want of state action.

10        In *Farrell,* 781 F. Supp. at 649, the court rejected indistinguishable allegations

11   of personal lack of knowledge as insufficient to state a claim for compelled association

12   under section1983.  In that case, the plaintiffs "insist[ed] they were compelled to join

13   [the Oakland firefighters' union]" based "primarily [on] their personal 'understanding'

14   or 'belief' that union membership was a condition of employment," because they were

15   never "informed" of their right not to join.  *Id.  Farrell* concluded those allegations

16   were not "sufficient to prove plaintiffs were compelled to join" when, to the contrary,

17   the collective bargaining agreement at issue "clearly set[] out the option to refuse

18   union membership." *Id.*

19        The same result is required here. California law explicitly provides that

20   Plaintiffs have the right to refrain from joining the Union as members and to refrain

21   from participating in the Union's activities, California Government Code section 3565,

22   and forbids the Union from interfering with that right.  Cal. Gov. Code §3571.1(b).

23   Plaintiffs' bare allegations of their "personal 'understanding' or 'belief' that union

24   membership was a condition of employment," *Farrell,* 781 F. Supp. At 649, are

25   woefully insufficient, in the face of section 3565, to plead that Plaintiffs' membership

26   was unconstitutionally compelled by their public employer, as would be required to

27

28

state a compelled association claim.[1]  *See Cooley v. Cal. Statewide Law Enforcement Ass'n*, 385 F. Supp. 3d 1077, 1081-82 (E.D. Cal. 2019) (ongoing dues obligations attributable to membership contract, not statute).

Indeed, another district court within the Ninth Circuit held the "state-policy" requirement was not satisfied in addressing a claim very similar to the claim Plaintiffs set forth.  In *Belgau v. Inslee*, 359 F. Supp. 3d 1000 (W.D. Wash. 2019) (appeal pending), the plaintiffs brought First Amendment claims under section1983 challenging the deduction of union dues from their state-administered paychecks after they resigned their union memberships.  The plaintiffs had signed membership cards that included a "one-year dues payment commitment."  *See id.* at 1006, 1012.

The court held that the "state policy" requirement was not satisfied because "the Plaintiffs fail[ed] to show that the contents of the agreements are in any way attributable to the State," noting that "the Union, a private entity, drafted the agreements and asked Plaintiff to sign them."  359 F. Supp. 3d at 1012. As the court summarized: "At its core . . . the source of the alleged constitutional harm is the sufficiency of the agreements, not the procedure for their collection that the State agreed to follow. 'The claimed constitutional deprivation cannot be traced to a right, privilege, or rule of conduct imposed by a governmental entity.'"  *Id.* at 1012-13 (quoting *Ohno*, 723 F.3d at 994); *see also Cooley*, 385 F. Supp. 3d at 1081-82 (finding no state action in materially similar challenge).

In sum, Plaintiffs cannot show that the Union's actions in collecting dues and fees from Plaintiffs pursuant to their respective membership contracts are "fairly attributable to the state." Their claims brought to enforce First Amendment rights therefore fail as a matter of law.

---

[1] That these allegations fail to make out a claim for relief under section 1983 does not leave Plaintiffs without a remedy; workers who contend a union violated their rights under Government Code section 3565 to refrain from joining a labor organization or participate in their activities can present unfair practice charges to the Public Employment Relations Board.  *See* Cal. Gov. Code §3563; *see also Collins,* 878 F.2d at 1153 (wrongful act of private party not actionable under §1983 but would be redressable under state law (citing *Civil Rights Cases,* 109 U.S. 3, 17 (1883)).

4.   <u>That Plaintiff Jackson denies signing the 2016 membership application does not cause a different result</u>

Plaintiff Jackson's allegation that he did not sign the 2016 membership application/dues-deduction authorization must be accepted as true for purposes of this motion.  But this does not change the result here; even if the Union has relied on an authorization Plaintiff did not sign to continue to collect fees after Jackson's resignation from the Union in 2019, that conduct does not give rise to a section 1983 cause of action.

As noted above, the Supreme Court has established a two-part test to determine whether a plaintiff states a section 1983 claim against a private actor: (1) The first test asks "whether the claimed deprivation has resulted from the exercise of a right or privilege having its source in state authority;" and (2) whether, the private party respondents may be appropriately characterized as "state actors."  *Lugar,* 457 U.S. at 939.  Both elements must be met for there to be state action.  *Id.* at 937-39).

To satisfy the first prong, a plaintiff must show that the deprivation of rights was "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible."  *Id*. at 937.  Here, Jackson alleges that the Union in February 2019 refused his request to terminate continued deduction of Union fees from his paychecks, relying on a fee-deduction authorization Jackson did not sign.  (Compl. ¶¶ 30-32, Exh. C.)

Collecting fees without employee authorization, however, would violate California law.  It would constitute a common law fraud violation.  And it would also violate that portion of SB 866 that authorizes deduction of union fees from public employee paychecks only upon proper employee authorization.  California Government Code section 1153 authorizes the State Controller to deduct fees to be forwarded to a union only upon the union certifying that it has "and will maintain an authorization, signed by the individual from whose salary or wages the deduction or reduction is to be made."  Moreover, collecting membership dues without authorization would violate applicable labor relations law.  Under the Higher

Education Employer-Employee Relations Act (which applies to the University), "[p]ublic employees ... have the right to refuse to join employee organizations or to participate in the activities of these organizations," Cal. Gov. Code § 3502, and it is illegal for "employee organizations" to "Impose or threaten to impose reprisals on employees, to discriminate or threaten to discriminate against employees, or otherwise to interfere with, restrain, or coerce employees because of their exercise of [those] rights."  Cal. Gov. Code § 3571.1.

Jackson's allegation that the Union has collected fees from him without valid authorization, his allegation of illegal activity by a private party, is fatal to any claim that depends on state action, because it forecloses the necessary first prong of the *Lugar* test, which requires showing that the private action was carried out pursuant to "state policy," rather than contrary to state policy.  *Collins*, 878 F.2d at 1151 (quoting *Roudybush v. Zabel*, 813 F.2d 173, 176 (8th Cir. 1987)).  It is axiomatic that "'private misuse of a state statute'" or other private conduct that violates state law "'does not describe conduct that can be attributed to the State.'"  *Collins*, 878 F.2d at 1152 (quoting *Lugar*, 457 U.S. at 941); see also, *e.g., Ouzts v. Maryland Nat'l Ins. Co.*, 505 F.2d 547, 553-54 (9th Cir. 1974) (*en banc*) (private party was not acting under color of state law where an "applicable statute expressly prohibits and makes criminal" the private party's conduct)); *Hassett v. Lemay Bank & Trust Co.*, 851 F.2d 1127, 1129-30 (8th Cir. 1988) (misuse of state statute by private actor not actionable under §1983); *Roudybush*, 813 F.2d at 177 (same); *Winterland Concessions Co. v. Trela*, 735 F.2d 257, 262 (7th Cir. 1984) (same).

Thus, in *Collins*, where the plaintiffs argued that their constitutional rights were violated when employees of Womancare placed them under citizens' arrest without following the California law that authorizes such arrests, the Ninth Circuit held that the employees' actions failed the first prong of *Lugar* because their actions "could not be ascribed to any governmental decision; rather [the Womancare employees] were acting contrary to the relevant policy articulated by the State."  *Collins*, 878 F.2d at 1153

17

1    (quoting *Lugar*, 457 U.S. at 940) (emphasis added).  And, in *Lugar* itself, the Supreme

2    Court held that the plaintiff's allegation that the private defendants unlawfully

3    deprived the plaintiff of his property without due process failed to state a section 1983

4    claim.  457 U.S. at 940.  *Lugar* also held that the plaintiff's claim alleging that the

5    private parties had invoked a state statute maliciously or without valid grounds did not

6    give rise to state action.  *Id*.  Instead, that claim amounted to nothing more than the

7    private misuse or abuse of a state statute.  *Id*. at 940-41.

8         In this case, Jackson's allegations regarding the 2016 membership application

9    and dues/fees-deduction authorization, if proven, would show that the Union acted in

10   violation of state civil law to obtain money from him. Because plaintiff has,

11   accordingly, alleged that the Union was "acting contrary to the relevant policy

12   articulated by the State," *Collins*, 878 F.2d at 1153 (quoting *Lugar*, 457 U.S. at 940)

13   (emphasis omitted), he fails to state claims under section1983.[2]

14        Even if Plaintiff Jackson's allegations of illegality were not fatal to his

15   section 1983 claim, which they are, Plaintiff's section 1983 claims would also fail the

16   second prong of the *Lugar* test, which requires showing that "the party charged with

17   the deprivation could be described in all fairness as a state actor."  *Ohno*, 723 F.3d at

18   994.  As discussed in detail above at II.A.2., the source of Plaintiff's alleged harm was

19   not a state actor. "Unions are not state actors; they are private actors." *Hallinan v.*

20   *Fraternal Order of Police, Chicago Lodge No. 7,* 570 F.3d 811, 815 (7th Cir. 2009).

21   There is no Controller or State policy that compels nonmembers to pay union dues.

22   Rather, the source of Plaintiff's alleged harm is the Union's reliance on a membership

23   card he allegedly did not sign, without the knowledge of any government officials, and

24   the Union's continued request for dues deductions after he requested termination of the

25   deductions in January 2019.

26

27   ――――――――――――――――

28   [2] As noted in n. 1 above, that this allegation fail to make out a claim for relief under section 1983 does not leave plaintiff without a remedy.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The mere fact that the State Controller transmitted dues payments to the Union as a result of the Union's allegedly illegal conduct does not give rise to a section1983 claim. *See Blum v. Yaretsky*, *supra*; *Knox v. Westley*, *supra*; and *Bain v. Cal. Teachers Ass'n*, *supra*.

**B.      Plaintiffs Have No Viable Claim for Dues Collected Prior to *Janus***

Plaintiffs concede in their Complaint that they joined the Union as members; Jackson in 2013, and Smith in 2006 and then again (with a new form) in 2016.  Yet both Plaintiffs seek through their Complaint a refund of dues collected by the Union, retroactive to the commencement of their employment with the University, which was concurrent with their originally joining the Union as members.  (Compl., Prayer for Relief, g.)  We show below that Plaintiffs have no viable claim for such relief.

1.      *Janus* does not apply to members or member dues

Plaintiffs argue, citing *Janus v. AFSCME Council 31*, that, although they joined the Union as members, they did so without affirmatively consenting to waive rights of free speech and freedom of association under the First and Fourteenth Amendments, union, and thus (Plaintiffs implicitly conclude), their acts of choosing to become members of the Union in 2006 and 2013 (and again, for Smith, in 2016), should be disregarded, and the dues they paid to the Union based on their actions joining the Union must be refunded.  (Compl. ¶¶ 73-79.)

Plaintiffs' reliance on *Janus*, is misplaced because voluntary members have no claim under Section 1983 (or state law) for a *Janus*-related refund of union membership dues.  Several courts have already concluded in rejecting claims seeking refunds of *membership* dues based on *Janus*, "*Janus* did not concern the relationship of unions and members; it concerned the relationship of unions and non-members." *Smith v. Bieker*, 2019 WL 2476679, at *2 (N.D. Cal. June 13, 2019); accord *O'Callaghan v. Regents of the Univ. of Cal.*, 2019 WL 2635585, at *3 (C.D. Cal. June 10, 2019) (denying motion for preliminary injunction); *Crockett v. NEA-Alaska*, 367 F.

MEMO OF P'S & A'S ISO MOTION TO DISMISS COMPLAINT                                    840111_2
Case No. 3:19-CV-1427 LAB BGS

Supp. 3d 996, 1008 (March 14, 2019); *Belgau v. Inslsee*, 359 F. Supp. 3d 1000, 1016-17 (W.D. Wash. 2019); *Cooley v. Cal. Statewide Law Enforcement Ass'n*, 2019 WL 331170, at *2-*3 (E.D. Cal. Jan. 25, 2019) (denying motion for preliminary injunction) and *Cooley v. Cal. Statewide Law Enforcement Ass'n*, 385 F. Supp.3d 1077 (E.D. Cal. 2019) (granting motion to dismiss); *Smith v. Superior Court*, 2018 WL 6072806, at *1 (N.D. Cal. Nov. 16, 2018) (denying motion for preliminary injunction).

The *Crockett* court explained that members "made a decision to pay union membership dues in exchange for certain benefits: a right to vote in union elections and the ability to influence collective bargaining efforts," and that this "voluntary choice precludes an argument that they were compelled to subsidize the Union Defendants' private speech." 367 F. Supp. 3d at 1008. *Crockett* rejected as "unpersuasive" the plaintiffs' "assertion that their union memberships were compelled because they should have had the option to avoid union fees altogether, as *Janus* now makes clear," explaining that "[t]he fact that plaintiffs would not have opted to pay union membership fees if *Janus* had been the law at the time of their decision does not mean their decision was therefore coerced." *Id*.; accord *Babb v. California Teachers Ass'n*, 2019 WL 2022222 (C.D. Cal. May 8, 2019) at *9; see also *Kidwell v. Transp. Commc'ns Intl Union*, 946 F.2d 283, 292-93 (4th Cir. 1991) ("Where the employee has a choice of union membership and the employee chooses to join, the union membership money is not coerced.  The employee is a union member voluntarily."); *Farrell v. IAFF*, 781 F. Supp. 647, 649 (N.D. Cal. 1992) (same).

2. <u>Plaintiffs' claims for refund of pre-*Janus* dues are time barred</u>

Plaintiffs' claims that they are entitled to refund of the membership dues they paid prior to tendering their resignations from the Union in 2019 are premised on the argument that they were deprived of certain information that would have made their decisions to join the Union in 2006 and 2013 (and, in the case of Smith, again in 2016) constitutionally valid, and, they argue, since those decisions did not pass constitutional muster, those decisions must now, in 2019, be set aside and Plaintiffs given restitution.

But these claims are time-barred by the statue of limitations applicable to section 1983 claims in California. In California, the section1983 statute of limitations is two years. *See Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004). Yet the conduct Plaintiffs complain of, Defendant's failure to apprise them of certain information that would have made their decision to join the Union constitutionally valid, happened well over two years before Plaintiffs filed this Complaint on July 30, 2019. Their section 1983 claims that their decisions to join the Union were invalid are thus time barred and must, on this additional ground, be dismissed. See *Bermudez v. SEIU Local 5*, 2019 WL 1615414, at \*2 (N.D. Cal. April 16, 2019).

### 3. *Janus* has no retroactive application

Even if Plaintiffs' claims for a refund of membership dues paid prior to their resignation from Union membership did not fail because *Janus* does not apply to membership dues, and did not fail because the claims are time-barred, and even if we could somehow make *Janus* apply to *members* and not just *non-member fee payers*, the claims, *Janus* does not apply retroactively, and thus forms no basis for Plaintiffs' claim for refunds.

Put simply, the claim for refunds is barred because the Union acted in good faith reliance on state statute and controlling U.S. Supreme Court precedent in collecting *pre-Janus* dues from members and fair-share fees from non-members. *See Danielson v. AFSCME Council 28,* 340 F.Supp.3d 1083, 1085-86 (W.D. Wash. 2018) (unions not retrospectively liable under §1983 for collecting *pre-Janus* fair-share fees in accordance with state law); *see also Crockett v. NEA-Alaska,* 367 F. Supp. 3d 996, 1003-1007 (D. Alaska 2019) (appeal filed) (same); *Carey v. Inslee,* 364 F.Supp.3d 1220, 1227-1232 (W.D. Wash. 2019) (appeal filed) (same); *Janus v. AFSCME Council 31,* 2019 WL 1239780, at \*1-3 (N.D. Ill. Mar. 18, 2019) (appeal filed) (same); *Cook v. Brown,* 364 F. Supp. 3d 1184, 1190-1194 (D. Or. 2019) (appeal filed) (same); *Mooney v. Illinois Educ. Ass'n*, 2019 WL 1575186, at \*2-11 (C.D. Ill. Apr. 11, 2019) (appeal filed) (same); *Hough v. SEIU Local 521*, 2019 WL 1785414, at \*1 (N.D. Cal. Apr. 16,

2019) (same); *Babb v. California Teachers Ass'n*, 2019 WL 2022222 (C.D. Cal. May 8, 2019) at \*5-9 (same); *Bermudez v. SEIU Local 5*, 2019 WL 1615414, at \*2-3 (N.D. Cal. April 16, 2019) (same); *Diamond v. Pa. State Educ. Ass'n*, 2019 WL 2929875 (W.D. Pa. July 8, 2019) (same); *Cooley v. Cal. Statewide Law Enf. Ass'n*, 385 F. Supp. 3d 1077, 1080-81 (E.D. Cal. 2019) (same).

**C.     Plaintiff Smith Remains Bound By the Terms of His 2016 Membership Agreement**

Even if the Union acted under color of state law when it decided to enforce the dues/fees authorization provisions in Plaintiff Smith's 2016 membership contract, the Union did not commit any constitutional violation in doing so.  That is because Plaintiff voluntarily authorized dues to be deducted from his paychecks through payroll deduction, with a limited period of revocability, in exchange for receiving the benefits of union membership. Under Supreme Court precedent, contracts such as this – in which a party forgoes a First Amendment right in exchange for consideration – are facially valid.  Plaintiff Smith cannot maintain an action for violation of section 1983 and common-law torts based on the Union's enforcement of a valid contract.

Plaintiff Smith signed a membership contract in 2016 that contains a dues-deduction authorization expressly stating that the authorization was "voluntary and not a condition of my employment" and would remain in effect "regardless of whether I am or remain a member of the Union" unless the authorization was revoked during an annual window period preceding the anniversary date of signing the membership contract or the termination date of a CBA  between Local 2010 and the University.

At the time of this writing, four district courts in the Ninth Circuit as well as the Ninth Circuit itself have rejected materially identical challenges to post-membership dues deductions in the face of similar binding membership contracts.  *See Anderson v. Service Empl. Int'l Union Local 503*, 2019 WL 4246688, at \* 2 (D. Or. Sept. 4, 2019); *Seager v. United Teachers Los Angeles*, 2019 WL 3822001, at \*2 (C.D. Cal. Aug. 14, 2019); *Cooley v. Cal. Statewide Law Enforcement Ass'n, supra*, 385 F. Supp. 3d at

1    1079-80; *Smith v. Bieker*, 2019 WL 2476679, at *2 (N.D. Cal. June 13, 2019); *Fisk v.*

2    *Inslee*, 2018 WL 6620080 at *3-4 (9th Cir. Dec. 17, 2018); *cf. Belgau v. Inslee*, 359 F.

3    Supp. 3d 1000, 1017 (W.D. Wash. 2019) ("[I]t is not unjust for [Plaintiffs] to have to

4    continue to pay dues for a limited time because that is what they agree to.").

5        It is well-established that "the First Amendment does not confer ... a

6    constitutional right to disregard promises that would otherwise be enforced under state

7    law." *Cohen v. Cowles Media, supra,* 501 U.S. at 672.  In *Cohen,* the Supreme Court

8    rejected a claim that the First Amendment prohibited enforcement of a newspaper's

9    promise not to reveal the identity of a confidential source. *Id.* at 666-70.  The Court

10   recognized that the doctrine of promissory estoppel simply "requires those who make

11   certain kinds of promises to keep them," *id.* at 672, and, therefore, that the application

12   of state promissory estoppel law to the newspaper's promise did not "offend the First

13   Amendment." *Id.* at 669.

14       *Cohen* controls here because the State's policy is simply to enforce Plaintiffs'

15   own affirmative agreements to dues deduction. In granting summary judgment for the

16   defendants against claims analogous to those here, a district court explained:

17           The freedom of speech and the freedom of association do not
18           trump the obligations and promises voluntarily and
             knowingly assumed. The other party to that contract has
19           every reason to depend on those promises for the purpose of
             planning and budgeting resources. The Constitution says
20           nothing affirmative about reneging legal and lawful
             responsibilities freely undertaken.

21   *Fisk v. Inslee,* 2017 WL 4619223 at *5 (W.D. Wash. Oct. 16, 2017) ("*Fisk I*").

22   The Ninth Circuit affirmed *Fisk I* in a memorandum disposition, holding that the

23   public employer's "deduction of union dues in accordance with the membership cards'

24   dues irrevocability provision does not violate [the employees'] First Amendment

25   rights." *Fisk v. Inslee*, 2018 WL 6620080 at *3 (9th Cir. Dec. 17, 2018) ("*Fisk II*").

26       *Cohen* is dispositive because Smith's 2016 membership agreement is a binding

27   contract under state law. *See Smith,* 2018 WL 6072806, at *1 (plaintiff who signed

28   membership agreement "formed a contract with [the union]); *Belgau,* 2018 WL

MEMO OF P'S & A'S ISO MOTION TO DISMISS COMPLAINT                                840111_2
Case No. 3:19-CV-1427 LAB BGS

4931602, at *5 ("Plaintiffs entered into a contract with the Union to be Union members and agreed in that contract to pay Union dues" for a specified period); *Fisk I,* 2017 WL 4619223, at *4 (signed card with dues authorization agreement was "valid contract"); *Cooley,* 2019 WL 33117, at *3 (same).

It is well-established that dues authorization agreements can create binding financial obligations that survive an employee's resignation from the union. *See, e.g., NLRB v. U.S. Postal Serv.,* 833 F.2d 1195, 1196 (6th Cir. 1987) (dues authorization not revocable despite resignation); *United Steelworkers of America, Local 4671 (National Oil Well, Inc.),* 302 NLRB 367, 368 (1991) (dues were still owed after employee's resignation where employee "clearly authorized the continuation of his dues deduction even in the absence of union membership"). The Ninth Circuit has explained that a "dues-checkoff authorization is a contract," and "[a] party's duty to perform even a wholly executory contract is not excused merely because he decides that he no longer wants the consideration for which he has bargained.... [T]he clear 'legal import' of the authorization's language ... b[i]nd[s] the employee to abstain from revoking the authorization," even after he resigns. *NLRB v. U.S. Postal Serv.,* 827 F.2d 548, 554 (9th Cir. 1987); *see also Belgau,* 2018 WL 4931602, at *5 ("[A] worker can refuse to associate with or join a union. That is her prerogative. But, once she joins voluntarily, in writing, she has the obligation to perform the terms of her agreement.") (quoting *Fisk I,* 2017 WL 4619223, at *5); *Smith,* 2018 WL 6072806, at *1 (same).

The language in Plaintiff Smith's 2016 membership agreement demonstrates his assent to the exact deductions the now challenges.  For example, Plaintiff Smith promised:

> This voluntary authorization and assignment shall be irrevocable, regardless of whether I am or remain a member of the Union, for the duration of the existing memorandum of understanding if any, between the Employer and the Local Union …   This authorization is voluntary and is not conditioned on my present or future membership in the Union.

1   (Compl. ¶48, Exh. H.)  Nothing in the First Amendment or in the Supreme Court's

2   decision in *Janus* serves to relieve Smith from his obligations under this contract.

3   **II.    Count II Fails to State a Cause of Action**

4         The gravamen of Count II is found in Paragraphs 91 and 92 of the Complaint,

5   where Plaintiffs allege:

6         91.    Because *Janus* requires a public employer to secure an
        employee's affirmative consent for all union paycheck deductions, UCSD

7       has a First Amendment obligation to provide sufficient information to
        employees about their *Janus* rights.

8

9         92.    The Gag Rule statutes [SB 866] violates Plaintiffs' First
        Amendment right to receive the information necessary to make the clear

10      and affirmative waiver to financially support as union, as required by
        *Janus*.

11        Just what portion of SB 866 Plaintiffs are invoking here is not clear.  To the

12   extent any portion of SB 866 might be read as forbidding the University from

13   providing employees information about union membership, it might be California

14   Government Code section 3550  That statue reads as follows:

15        A public employer shall not deter or discourage public
        employees or applicants to be public employees from

16      becoming or remaining members of an employee
        organization, or from authorizing representation by an

17      employee organization, or from authorizing dues or fee
        deductions to an employee organization. This is declaratory

18      of existing law.

19        The allegations in Count II fail to state a cause of action for several reasons.

20        First, the assertion that *Janus* compels the State to provide certain unspecified

21   information to Plaintiffs is simply wrong.  Nothing in *Janus* so provides.  Indeed,

22   nothing in the First Amendment compels the government to speak.  The Supreme

23   Court has specifically stated that, in the context of labor relations, "the First

24   Amendment does not impose any affirmative obligation on the government to listen

25   [or] respond" to employees.  *Smith v. Arkansas State Highway Employees*, 441 U.S.

26   463, 465 (1979).  See also, *Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271,

27   273 (1984) (nothing in the First Amendment suggests that the rights to speak,

28

associate, and petition require government policymakers to listen or respond to individuals' communications on public issues).

Second, it is not at all clear that section 3550 can be read as forbidding the University from providing, if it so chooses, any information to Plaintiffs about what the *Janus* decision means to them vis-à-vis their Union membership.  The California Public Employment Relations Board ("PERB") has initial jurisdiction to determine violations of section 3550, and it is PERB, not this court, that should make the initial determination on whether section 3550 is to be read in the manner Plaintiffs suggest. *See Leek v. Washington Unified Sch. Dist.*, 124 Cal.App.3d 43, 51-54 (1981); *Link v. Antioch Unified Sch. Dist.*, 142 Cal. App. 3d 765, 769 (1983) ("Looking beyond the constitutional label given to plaintiffs' grievances herein … the substance of conduct complained of may also constitute unfair practices which arguably could be resolved by a PERB ruling.").

Third, Plaintiffs have alleged no actual harm resulting from the alleged prohibition on the University speaking to them about the law surrounding union membership in the public sector, and they thus have no standing to complain about SB 866.  Notwithstanding whatever SB 866 has allegedly prevented the University from saying to Plaintiffs following issuance of the *Janus* decision, both Plaintiffs, following *Janus*, tendered to the Union their resignations from Union membership (which were immediately accepted) and their demands that Union fees no longer be deducted from their paychecks (which the Union rejected).  Plaintiffs allege no information that the University did not provide them, and it is hard to imagine any information that the University could provide them, that would have prompted a different response from the Union.

Under Article III of the U.S. Constitution, the judicial power is limited to "Cases" and "Controversies."  That a plaintiff must have standing to sue is "rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016).  To have Article III standing, a plaintiff must have "an actual

injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990).  An injury for the purposes of Article III must be "concrete, particularized, and actual or imminent." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010).  For an injury to be concrete and particularized, it must cause real harm that affects the plaintiff in a personal and individual way.  See *Spokeo*, 136 at 1548 (citations omitted).

Plaintiffs have alleged no "actual injury" flowing from SB 866's alleged prohibition on the University providing Plaintiffs information about the Janus decision, and thus they have no standing to bring the claim found in Count II of their Complaint.

## III.    Count III Fails to State a Cause of Action

Count III is a slight variation on Count II.  In this Count, Plaintiffs allege that SB 866 interferes with their First Amendment rights by prohibiting Plaintiffs from speaking to the University.  Specifically, in Paragraphs 104 and 104 of the Complaint Plaintiffs allege:

> 104.   Public employee's First Amendment waivers cannot be "freely given" unless they first know that they possess and may freely exercise that right.

> 105.  Under the Gag Rule statutes [SB 866], public employees are prohibited from speaking to their own employers about their First Amendment rights recognized by the Janus decision and their ability to exercise those rights.

Again, the Complaint does not specify what portions of SB 866 Plaintiffs intend to invoke as the basis of their claim.  But it would appear likely that the intended reference is to California Government Code section 1157.12(b), which provides that public employers that administer payroll deductions shall:

> (b) Direct employee requests to cancel or change deductions for employee organizations to the employee organization, rather than to the public employer. The public employer shall rely on information provided by the employee organization regarding whether deductions for an employee organization were properly canceled or changed, and the employee organization shall indemnify the public employer for any claims made by the employee for deductions made in reliance on that information. Deductions may be revoked

1   only pursuant to the terms of the employee's written authorization.

2   The allegations in Count III fail to state a cause of action for the following

3   reasons.

4   First, Plaintiffs' allegations about the impact of this statute on their freedom to

5   speak to the University are simply wrong.  The statute does not prevent Plaintiffs from

6   saying anything they wish to say to the University.  The statute instead simply sets up a

7   procedure to follow for Plaintiffs when they want to "cancel or change deductions" for

8   the Union; specifically, they are to take that request to the Union.  Nevertheless, the

9   statute does not prevent Plaintiffs from saying to the University that they wish to

10  cancel or change Union deductions.  Instead the statue prevents the University from

11  acting on such statements in order to change or cancel Union deductions.  Thus the

12  statute's impact on the University in no way impacts Plaintiffs' free speech rights.

13  Second, for the same reasons as discussed above with respect to Count II,

14  Plaintiffs have alleged no "actual injury" arising from their alleged inability to speak to

15  the University, and they thus lack standing to make the claims found in Count III.

16  Specifically, Plaintiffs admit that they spoke to the University about their wish to

17  resign from the Union and to stop deductions (Compl. ¶¶ 27, 33, 49), and they have not

18  alleged that anything contained in SB 866 prevented them from saying anything they

19  wished to the University.

20  **IV.   Counts IV and V Fail to State a Cause of Action**

21  Count IV alleges that SB 866 violates Plaintiffs' Fourteenth Amendment

22  procedural due process rights, and Count V alleges that SB 866 violates Plaintiffs'

23  Fourteenth Amendment substantive due process rights.

24  The gravamen of the claim in Count IV is found at Paragraph 126, where

25  Plaintiffs allege that money "deducted in reliance on union assertions regarding

26  employee waivers as required by the Gag Rule statutes [SB 866] violates public

27  employees' rights to procedural due process."

28

The gravamen of the claim in Count V is found in two paragraphs.  First, in Paragraph 138, Plaintiffs allege that, pursuant to SB 866, the "sole means provided by law for public employees to obtain information regarding their First Amendment rights recognized by *Janus* requires them to consult a private third-party (the union)." Second, in Paragraph 145, Plaintiffs allege that the SB 866 statutes "create a fundamentally unfair, biased procedure for exercising public employees' First Amendment rights to terminate support for a union that violates public employees' rights to substantive due process."

Plaintiffs do not clearly allege what protected interest the University has deprived them of, or what process is due them, and on this basis Counts IV and V do not state a cause of action.

In any event, it would appear that the thrust of Plaintiffs' claim here is an attack on the procedures established under California Government Code section 1157.12.  As noted above, section 1157.12 instructs the University to refer Plaintiffs' requests regarding cancelation of or changes in Union deductions to the Union, and directs the University to rely on the Union's certification as to whether Plaintiffs have or have not authorized continued Union deductions.  From this, Counts IV and V appear to draw two conclusions that fundamentally underpin these claims, both of which are wrong.

First, Plaintiffs conclude that section 1157.12 prevents them from obtaining "information regarding their First Amendment rights recognized by *Janus*" from any source other than the Union.  This is simply not true, and represents a gross misreading of the statute.  Nothing in section 1157.12 prevents Plaintiffs from obtaining information about their "*Janus* rights" from any number of sources, including their sponsor in this action, the Pacific Legal Foundation.  In addition, notwithstanding Plaintiffs' misreading of section 1157.12 and section 3550, nothing in the SB 866 statutes would appear to prevent the University, if it so choose, of advising Plaintiffs about their "*Janus* rights."

Second, Plaintiffs conclude that section 1157.12 completely forecloses the University from ever examining whether the Union has truthfully and correctly represented that Plaintiffs have on file with the Union valid authorizations for the deduction of Union fees. But this argument ignores an important provision in section 1157.12(a).  Specifically, that statute provides in part:  "An employee organization that certifies that it has and will maintain individual employee authorizations shall not be required to provide a copy of an individual authorization to the public employer *unless a dispute arises about the existence or terms of the authorization*."  (Emphasis added.) Thus, the statute explicitly calls for the University to step into the process, and to obtain a copy of the authorization the Union is relying on to demand Union deductions, if there is a dispute "about the existence or terms of the authorization."  This opportunity for public employer review of the authorization process completely undercuts any argument that the process for public employees to cancel or change their Union deductions established by section 1157.12 violates either Plaintiffs' procedural or substantive due process rights.

Furthermore, if the Union is untruthfully or incorrectly certifying to the University that Plaintiffs have authorized Union deductions, or if the University is making deductions in contravention of the Union's certification or in disregard of plain evidence regarding the absence of an authorization, Plaintiffs would have a remedy at state law.  *See, e.g.*, *Renken v. Compton City Sch. Dist.*, 207 Cal. App. 2d 106 (1962) (writ of mandate available to enforce California Government Code sections 1157.1 and 1157.3).  In these circumstances, Plaintiffs' bare assertion that they have no adequate remedy at law is insufficient for the showing that state remedies are defective necessary to a due process claim such as this one.  *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

Finally, for reasons already addresses at length above, Counts IV and V do not contain allegations that Plaintiffs have suffered an "actual injury" by operation of SB

866, and thus Plaintiffs do not have standing to bring the claims contained in Counts IV and V.

## **CONCLUSION**

For the reasons stated above, and based on the record as a whole, Teamsters Local 2010 respectfully requests the Court to grant this Motion to Dismiss.

Dated:  September 27, 2019          BEESON, TAYER & BODINE, APC


                                    By:     /s/ Andrew H. Baker
                                         ANDREW H. BAKER
                                         Attorneys for Teamsters Local 2010