ANDREW H. BAKER, SBN 104197
BEESON, TAYER & BODINE, APC
483 Ninth Street, 2nd Floor
Oakland, CA  94607
Telephone:   (510) 625-9700
Facsimile:    (510) 625-8275
Email:         abaker@beesontayer.com

Attorneys for Defendant
Teamsters Local 2010

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL JACKSON and TORY SMITH,<br><br>Plaintiffs,<br><br>v.<br><br>JANET NAPOLITANO, in her official capacity as President of the University of California; TEAMSTERS LOCAL 2010; XAVIER BECERRA, in his official capacity as Attorney General of the State of California; and BETTY T. YEE, in her official capacity as Controller of the State of California,<br><br>Defendants. | Case No. 3:19-CV-1427 LAB AHG<br><br>**NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF TEAMSTERS LOCAL 2010'S SEPTEMBER 27, 2019, MOTION TO DISMISS** |

In support of the Motion to Dismiss Defendant Teamsters Local 2010 ("Local 2010") filed in this matter on September 27, 2019, Local 2010 submits this Notice of Supplemental Authority to notify the Court of the opinion in *Creed v. Alaska State Employees Association, AFSCME Local 52*, __ F.Supp.3d __, 2020 U.S. Dist. LEXIS 123964 (D. Alaska, July 15, 2020).

The Court in *Creed* granted defendants' motion to dismiss plaintiffs' complaint which launched a Constitutional attack on enforcement, after plaintiffs had resigned their union membership, of the membership application/dues-deduction authorizations plaintiffs had signed prior to the Supreme Court issued its decision in *Janus v.*

NOTICE OF SUPPLEMENTAL AUTHORITY ISO TEAMSTERS LOCAL 2010'S
SEPTEMBER 27, 2019, MOTION TO DISMISS
Case No. 3:19-CV-1427 LAB AHG

1

903656

*AFSCME Council 31*, 138 S. Ct. 2448 (2018).  The Court agreed with the arguments Local 2010 made in support of its motion to dismiss at pages 22-25 of it memorandum of points and authorities (ECF No. 9-1), concluding that *Janus* has no application to employees who sign membership application/dues-deduction authorizations, and rejecting plaintiffs' argument that their pre-*Janus* agreement to sign such membership application/dues-deduction authorizations was Constitutionally invalid.

     A true and correct copy of the *Creed v. Alaska State Employees Association, AFSCME Local 52* opinion is attached hereto as **Exhibit A**.

Dated:  July 23, 2020                BEESON, TAYER & BODINE, APC


                                          By:  */s/ Andrew H. Baker*
                                                  ANDREW H. BAKER
                                                  Attorneys for Teamsters Local 2010

NOTICE OF SUPPLEMENTAL AUTHORITY ISO TEAMSTERS LOCAL 2010'S
SEPTEMBER 27, 2019, MOTION TO DISMISS
Case No. 3:19-CV-1427 LAB AHG

2

903656

# EXHIBIT A

# Creed v. Alaska State Emples. Association/AFSCME Local 52

United States District Court for the District of Alaska

July 14, 2020, Decided; July 15, 2020, Filed

No. 3:20-cv-0065-HRH

**Reporter**
2020 U.S. Dist. LEXIS 123964 *

LINDA CREED and TYLER RIBERIO, Plaintiffs, vs. ALASKA STATE EMPLOYEES ASSOCIATION/AFSCME LOCAL 52 and KELLY TSHIBAKA, in her official capacity as Commissioner of Administration for the State of Alaska, Defendants.

**Counsel:** [*1] For Linda Creed, Tyler Riberio, Plaintiffs: Sonja Kathleen Redmond, LEAD ATTORNEY, Law Office of Sonja Redmond, Soldotna, AK; Daniel Robert Suhr, PRO HAC VICE, Liberty Justice Center, Chicago, IL.

For Alaska State Employees Association/AFSCME Local 52, Defendant: Molly C. Brown, LEAD ATTORNEY, Dillon & Findley, P.C. (Anch), Anchorage, AK; Matthew J. Murray, Scott A. Kronland, Stefanie L. Wilson, PRO HAC VICE, Altshuler Berzon LLP, San Francisco, CA.

For Kelly Tshibaka, in her official capacity as Commissioner of Administration for the State of Alaska, Defendant: Kevin Andrew Higgins, LEAD ATTORNEY, Law Office of Kevin Higgins, Juneau, AK; John Michael Connolly, Steven Christopher Begakis, William S. Consovoy, PRO HAC VICE, Consovoy McCarthy PLLC, Arlington, VA.

**Judges:** H. Russel Holland, United States District Judge.

**Opinion by:** H. Russel Holland

## Opinion

WO

ORDER

Motion to Dismiss; Cross-Motion for Summary Judgment

Defendant ASEA moves to dismiss plaintiffs' complaint.[1] This motion is opposed by plaintiffs[2] and plaintiffs cross-move for summary judgment.[3] Defendant Tshibaka does not oppose plaintiffs cross-motion but does oppose ASEA's motion to dismiss.[4] Defendant ASEA opposes plaintiffs' cross-motion.[5] Oral argument was [*2] not requested and is not deemed necessary.

Facts

Plaintiffs are Linda Creed and Tyler Riberio. Defendants are the Alaska State Employees Association/AFSCME Local 51 ("ASEA") and Kelly Tshibaka, in her official capacity as the Commissioner of Administration for the State of Alaska.

Plaintiffs are Alaska state employees. Alaska law makes union membership for state employees voluntary. See AS 23.40.080 ("[p]ublic employees may self-organize and form, join, or assist an organization to bargain collectively through representatives of their own choosing, and engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection"). "Membership" in ASEA "is not a condition of employment, and employees must sign [a] form if they wish to join the union." State of Alaska v. Alaska State Employees Association, Case No. 3AN-19-09971CI,

---

[1] Docket No. 24.

[2] Docket No. 28.

[3] Docket No. 27.

[4] Docket No. 30.

[5] Docket No. 33.

Temporary Restraining Order at 3 (Oct. 3, 2019).[6] AS 23.40.220 provides that

> [u]pon written authorization of a public employee within a bargaining unit, the public employer shall deduct from the payroll of the public employee the monthly amount of dues, fees, and other employee benefits as certified by the secretary of the exclusive [*3] bargaining representative and shall deliver it to the chief fiscal officer of the exclusive bargaining representative.

ASEA's collective bargaining agreement with the state provides:

> Upon receipt by the Employer of an Authorization for Payroll Deduction of Union Dues/Fees dated and executed by the bargaining unit member which includes the bargaining unit member's employee ID number, the Employer shall each pay period deduct from the bargaining unit member's wages the amount of the Union membership dues owed for that pay period.[7]

Creed alleges that she joined ASEA on July 19, 2017.[8] Creed alleges that at the time she joined the union, "she was forced to either join and pay dues or not join and pay fees, so she chose to join."[9] Riberio alleges that he joined ASEA on February 12, 2018.[10] Riberio alleges that at the time he joined the union, "he believed that membership would provide value to him and his colleagues."[11]

The Union Membership Card/Payroll Deduction Authorization that plaintiffs signed provided:

> I hereby apply for or commit to maintain membership in ASEA/AFSCME Local 52 and I agree to abide by its Constitution and Bylaws. By this application, I authorize ASEA/AFSCME Local 52 and its successor [*4] or assign . . . to act as my exclusive bargaining representative for purposes of collective bargaining with respect to wages, hours and other terms and conditions of employment with my Employer.
> Effective immediately, I hereby voluntarily authorize and direct my Employer to deduct from my pay each period, regardless of whether I am or remain a member of ASEA, the amount of dues certified by ASEA, and as they may be adjusted periodically by ASEA. I further authorize my Employer to remit such amount monthly to the ASEA. My decision to pay my dues by way of payroll deduction, as opposed to other means of payment, is voluntary and not a condition of my employment.
> This voluntary authorization and assignment shall be irrevocable, regardless of whether I am or remain a member of ASEA, for a period of one year from the date of execution or until the termination date of the collective bargaining agreement . . . between the Employer and the Union, whichever occurs sooner, and for year to year thereafter, unless I give the Employer and the Union written notice of revocation not less than ten (10) days and not more than twenty (20) before the end of any yearly period.[12]

Both plaintiffs also checked [*5] the box on the form that read: "Yes, I choose to be a union member."[13]

On June 27, 2018, the Supreme Court issued its decision in Janus v. American Federation of State, County, and Municipal Employees, Council 31, 138 S. Ct. 2448, 201 L. Ed. 2d 924 (2018). Janus involved a challenge by an Illinois state employee to a state statute that authorized the imposition of agency fees for nonunion members. Id. at 2461. The Court held that "States and public-sector unions may no longer extract agency fees from nonconsenting employees" because "[t]his procedure violates the First Amendment. . . ." Id. at 2486. The Court stated that "[n]either an agency fee nor any other payment to the union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay." Id.

More than one year later, on July 31, 2019, Riberio "wrote to the union . . . to resign his position as a union steward and to cancel his membership and dues authorization[.]"[14] Riberio alleges that he did so because "[h]e learned through experience within the union that its priorities and values did not comport with his views on important topics."[15]

On August 27, 2019, the Attorney General for the State of

---

[6] A copy of this order is attached as Exhibit A to the Declaration of Jake Metcalfe [etc.], which is appended to ASEA's Motion to Dismiss, Docket No. 24.

[7] Exhibit A at ¶ 3.04(A), Complaint, Docket No. 1.

[8] Complaint at 3, ¶ 6, Docket No. 1.

[9] Id. at 5, ¶ 18.

[10] Id. at 3, ¶ 7.

[11] Id. at 5, ¶ 19.

[12] Exhibit B at 1, Complaint, Docket No. 1.

[13] Exhibit C at 1; Exhibit D at 1, Metcalfe Declaration, which is amended to Motion to Dismiss, Docket No. 24.

[14] Complaint at 5-6, ¶ 19, Docket No. 1.

[15] Id. at 5, ¶ 19.

Alaska opined "that Janus requires a significant change to the State's current" union-related dues and fees "practice [*6] in order to protect state employees' First Amendment rights."[16] The Attorney General opined that "the State must revamp its payroll deduction process for union dues and fees to ensure that it does not deduct funds from an employee's paycheck unless it has 'clear and compelling evidence' of the employee's consent."[17] The Attorney General opined that "Janus did not distinguish between members and non-members of a union" and "[t]hus the State has no more authority to deduct union dues from one employee's paycheck than it has to deduct some lesser fee or voluntary non-dues from another's."[18] The Attorney General recommended that the State have employees provide their consent to join the union or pay fees directly to the State, rather than providing this consent to the union.[19] This would, according to the Attorney General, ensure "that an employee's consent to payroll deductions for union dues and fees is knowing, intelligent, and voluntary."[20]

Creed alleges that the day after the Attorney General's opinion was released, she "wrote to ASEA to cancel her [union] membership and dues authorization[.]"[21] She alleges that ASEA advised her "that she was obligated to continue paying dues until her opt-out window ten months [*7] in the future."[22]

Riberio alleges that on August 28, 2019, he "wrote a letter to Commissioner Tshibaka's agency to end continued deduction of union dues from his paycheck" and that he included "a copy of his letter of July 31, 2019."[23] Riberio also alleges that on September 20, 2019, he "completed a standard State of Alaska payroll form to cease his union dues deductions."[24]

In September 2019, the State, pursuant to Administrative Order No. 312, stopped dues deductions for state employees, including plaintiffs. Administrative Order No. 312 was "issue[d] to establish a procedure that ensures that the State of Alaska honors the First Amendment free speech rights of state employees to choose whether or not to pay union dues and fees through payroll deduction."[25] The procedure set out in Administrative Order No. 312 called for employees to provide their consent for the deduction of union dues or fees directly to the State and gave employees the right to revoke their consent at any time.[26] Legal action between the State and ASEA over Administrative Order No. 312 ensued, and on October 3, 2019, a state court issued a temporary restraining order which required "the reinstatement of cancelled dues authorizations, [*8] including those of [p]laintiffs. . . ."[27]

Creed alleges that "[o]n October 7, 2019, Defendant Commissioner Tshibaka wrote to [her] to inform her that pursuant to the state court's order, [Tshibaka] was reinstating the dues deduction from Creed's paychecks."[28] Creed alleges that "[t]he opt-out window for [her] pursuant to her dues checkoff authorization[] will not arise until July 2020."[29] ASEA contends that Creed's opt-out window began on June 30, 2020 and Jake Metcalfe, the Executive Director of ASEA, avers that "ASEA will consider this lawsuit to be a request to end her deductions when that window period begins, and ASEA will instruct the Alaska Department of Administration to end Plaintiff Creed's dues deductions as of June 30, 2020."[30]

Riberio alleges that "[i]n January 2020, which was during the resignation period prescribed in the dues checkoff authorization he signed, [he] sent a letter resigning his membership from the union. Defendant ASEA executed his opt-out and the State stopped withholding dues from his paycheck at the new pay-period."[31]

On March 16, 2020, plaintiffs commenced this action. In their complaint, they assert § 1983 claims based on allegations that defendants violated their " [*9] First Amendment rights to

---

[16] Clarkson Memo, Exhibit C at 2, Complaint, Docket No. 1.

[17] Id. at 4.

[18] Id. at 6.

[19] Id. at 12-13.

[20] Id. at 12.

[21] Complaint at 6, ¶ 21, Docket No. 1.

[22] Id.

[23] Id. at 6, ¶ 22.

[24] Id. at 6, ¶ 23.

[25] Administrative Order No. 312, Exhibit D at 1, Complaint, Docket No. 1.

[26] Id. at 3-4.

[27] Complaint at 7, ¶ 26, Docket No. 1. The TRO was converted into a preliminary injunction on November 5, 2019. Exhibit B, Metcalfe Declaration, which is appended to Motion to Dismiss, Docket No. 24.

[28] Id. at 7, ¶ 27.

[29] Id. at 8, ¶ 29.

[30] Metcalfe Declaration at 2, ¶ 8, which is appended to Motion to Dismiss, Docket No. 24.

[31] Complaint at 7-8, ¶ 28, Docket No. 1.

free speech and free association to not financially support a union without their affirmative consent."[32] Plaintiffs seek damages and declaratory and injunctive relief. Specifically, plaintiffs seek

> 1) a declaration that "limiting the ability of [p]laintiffs to revoke the authorization to withhold union dues from their paychecks to a window of time is unconstitutional because they did not provide affirmative consent;"
>
> 2) a declaration that their "signing of the union card cannot provide a basis for their affirmative consent to waive their First Amendment rights upheld in Janus because such authorization was based on an unconstitutional choice between paying the union as a member or paying the union as a non-member, and was made without full information as to their rights;"
>
> 3) a declaration "that the practice by Defendant Commissioner Tshibaka of withholding union dues from [p]laintiffs' paychecks was unconstitutional because [p]laintiffs did not provide affirmative consent for her to do so;"
>
> 4) "an injunction ordering ASEA to immediately allow [p]laintiff Creed to resign her union membership;"
>
> 5) an injunction prohibiting "Tshibaka from continuing to deduct . . . dues from [p]laintiff Creed's [*10] paychecks;"
>
> 6) an injunction prohibiting ASEA from accepting dues deducted from Creed's paychecks; and
>
> 7) damages in the form of dues collected both pre- and post-Janus.[33]

ASEA now moves to dismiss plaintiffs' claims, and plaintiffs cross-move for summary judgment on their claims against both defendants.

Discussion

ASEA first moves to dismiss plaintiffs' claims for prospective relief pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure. "Pursuant to Rule 12(b)(1), a party may seek dismissal of an action for lack of subject matter jurisdiction." Sutcliffe v. Wells Fargo Bank, N.A., 283 F.R.D. 533, 545 (N.D. Cal. 2012). "Federal courts lack subject matter jurisdiction over moot claims." GLW Ventures LLC v. United States Dep't of Agric., 261 F. Supp. 3d 1098, 1103 (W.D. Wash. 2016). "'A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—

---

[32] Complaint at 10, ¶ 40, Docket No. 1.

[33] Complaint at 10-11, Docket No. 1.

'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" Rosebrock v. Mathis, 745 F.3d 963, 971 (9th Cir. 2014) (quoting Already, LLC v. Nike, Inc., 568 U.S. 85, 91, 133 S. Ct. 721, 184 L. Ed. 2d 553 (2013)).

Plaintiffs' claims for prospective relief are moot because the State is no longer deducting union dues from their paychecks. Thus, plaintiffs' claims for prospective relief as to ASEA are dismissed. Plaintiffs are not given leave to amend as to these claims as amendment would be futile.

ASEA next moves to dismiss plaintiffs' remaining claims pursuant to Rule 12(b)(6). "'To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain [*11] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Zixiang Li v. Kerry, 710 F.3d 995, 999 (9th Cir. 2013) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Iqbal, 556 U.S. at 678). "The plausibility standard requires more than the sheer possibility or conceivability that a defendant has acted unlawfully." Id. "'Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Iqbal, 556 U.S. at 678). "[T]he complaint must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" In re Rigel Pharmaceuticals, Inc. Securities Litig., 697 F.3d 869, 875 (9th Cir. 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "In evaluating a Rule 12(b)(6) motion, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the light most favorable to the plaintiff." Adams v. U.S. Forest Srvc., 671 F.3d 1138, 1142-43 (9th Cir. 2012). "However, the trial court does not have to accept as true conclusory allegations in a complaint or legal claims asserted in the form of factual allegations." In re Tracht Gut, LLC, 836 F.3d 1146, 1150 (9th Cir. 2016).

"'To state a claim under § 1983, a plaintiff [1] must allege [*12] the violation of a right secured by the Constitution and laws of the United States, and [2] must show that the alleged deprivation was committed by a person acting under color of state law.'" Naffe v. Frey, 789 F.3d 1030, 1035-36 (9th Cir. 2015) (quoting West v. Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988)). "Dismissal of a § 1983 claim following a Rule 12(b)(6) motion is proper if the complaint is devoid of factual allegations that give rise to a plausible inference of either element." Id. at 1036.

Plaintiffs' § 1983 claims are based on allegations that their First Amendment rights were violated. "Compelling a person to subsidize the speech of other private speakers raises . . . First Amendment concerns." Janus, 138 S. Ct. at 2464. It is a "bedrock principle that, except perhaps in the rarest of circumstances, no person in this country may be compelled to subsidize speech by a third party that he or she does not wish to support." Harris v. Quinn, 573 U.S. 616, 656, 134 S. Ct. 2618, 189 L. Ed. 2d 620 (2014).

Plaintiffs allege that "[r]equiring a government employee to pay money to a union violates that employee's First Amendment rights to free speech and free association unless the employee 'affirmatively consents' to waive his or her rights."[34] Plaintiffs allege that "[f]rom when they joined the union until June 27, 2018, . . . because they were not given the option of paying nothing to the union as a non-member of the union, [they] could not have provided affirmative [*13] consent to . . . have dues deducted from their paychecks."[35] Plaintiffs allege that their "consent to dues collection was not 'freely given' because it was given based on an unconstitutional choice of either paying the union as a member or paying the union agency fees as a non-member."[36] Plaintiffs also allege that "[s]ubsequent to the Supreme Court's decision in Janus on June 27, 2018, [they] communicated that they did not provide affirmative consent to remain members of Defendant ASEA or to having union dues withheld from their paychecks by Defendant Commissioner Tshibaka."[37] Plaintiffs alleged that defendants violated their First Amendment rights "by continuing to withhold union dues from their paychecks"[38] after they had revoked their consent.

Plaintiffs have not plausibly alleged a First Amendment violation because they affirmatively consented to having dues collected from their paychecks when they signed the Payroll Deduction Authorization forms. Those forms provided that "Yes, I chose to be a union member[,]" that "I hereby voluntarily authorize and direct my Employer" to deduct union dues, that "[m]y decision to pay my dues by way of payroll deduction . . . is voluntary and not a condition of my employment[,]" and [*14] that "[t]his voluntary authorization and assignment shall be irrevocable . . . unless I give the Employer and the Union written notice of revocation not less than ten (10) days and not more than twenty (20) before the end of any yearly period."[39]

These Payroll Deduction Authorization forms plaintiffs signed created a contract between plaintiffs and ASEA. See Crockett v. NEA-Alaska, 367 F. Supp. 3d 996, 1008 (D. Alaska 2019) (holding that a similar agreement "to become union members in exchange for benefits created a contract" between the members and the unions). Plaintiffs' and Tshibaka's arguments to the contrary are unavailing. Plaintiffs appear to argue that there is no contract between them and ASEA because the dues authorization form is not a traditional two-party contract, but rather a three-party assignment. See, e.g., N.L.R.B. v. Cameron Iron Works, Inc., 591 F.2d 1, 3 (5th Cir. 1979) (referring to dues authorization as "assignment"). But, the fact the due authorization form also involves an assignment to a third party does not mean it is not a contract between plaintiffs and ASEA. Tshibaka's contention that the dues authorization form provides no consideration in return for the employee's agreement to join the union and pay dues is simply wrong. Although formation of a contract requires mutual consideration, [*15] Hall v. Add-Ventures, Ltd., 695 P.2d 1081, 1087 n.9 (Alaska 1985), plaintiffs received access to union membership rights and benefits in exchange for agreeing to join the union and pay dues.

"[T]he First Amendment does not confer . . . a constitutional right to disregard promises that would otherwise be enforced under state law[.]" Cohen v. Cowles Media Co., 501 U.S. 663, 672, 111 S. Ct. 2513, 115 L. Ed. 2d 586 (1991). This principle applies here. As one district court explained,

> [t]he freedom of speech and the freedom of association do not trump the obligations and promises voluntarily and knowingly assumed. The other party to that contract has every reason to depend on those promises for the purpose of planning and budgeting resources. The Constitution says nothing affirmative about reneging legal and lawful responsibilities freely undertaken.

Fisk v. Inslee, Case No. C16-5889RBL, 2017 U.S. Dist. LEXIS 170910, 2017 WL 4619223, at *5 (W.D. Wash. Oct. 16, 2017). And, the Ninth Circuit affirmed the district court in an unpublished decision, explaining that "[a]lthough Appellants resigned their membership in the union and objected to providing continued financial support, the First Amendment does not preclude the enforcement of 'legal obligations' that are bargained-for and 'self-imposed' under state contract law." Fisk v. Inslee, 759 Fed.Appx. 632, 633

---

[34] Complaint at 8, ¶ 31, Docket No. 1.

[35] Id. at 10, ¶ 41.

[36] Id. at 10, ¶ 42.

[37] Id. at 9, ¶ 36.

[38] Id. at 2, ¶ 4.

[39] Exhibits C & D, Metcalfe Declaration, which is appended to Motion to Dismiss, Docket No. 24.

(9th Cir. 2019) (quoting Cohen, 501 U.S. at 668-71). Nothing in Janus changes this.

"Janus is inapplicable to situations where an employee chooses to join a union, authorizes [*16] dues deductions over an entire . . . year, receives union benefits not available to nonmembers, and then later attempts to cancel deductions outside of the opt-out period they earlier agreed to." Durst v. Oregon Education Association, __ F.3d __, 2020 U.S. Dist. LEXIS 56638, 2020 WL 1545484, at *4 (D. Or. 2020). "The animating principle of Janus was not that the payment of union dues violates the First Amendment, but rather that compelling non-union members to support a union by paying fees violates the First Amendment." Molina v. Pennsylvania Social Service Union, Service Employees Int'l, __ F. Supp. 3d __, 2020 U.S. Dist. LEXIS 81307, 2020 WL 2306650, at *8 (M.D. Pa. May 8, 2020). Janus involved an employee who "[u]nder his unit's collective-bargaining agreement, . . . was required to pay an agency fee of $44.58 per month[,]" even though he had not joined the union. Janus, 138 S. Ct. at 2461. The Court held that "States and public-sector unions may no longer extract agency fees from nonconsenting employees" because "[t]his procedure violates the First Amendment. . . ." Id. at 2486. The Court explained:

> Neither an agency fee nor any other payment to the union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay. By agreeing to pay, nonmembers are waiving their First Amendment rights, and such a waiver cannot be presumed. Rather, to be effective, the waiver must be freely given and shown by clear and compelling evidence. Unless [*17] employees clearly and affirmatively consent before any money is taken from them, this standard cannot be met.

Id. (internal citations omitted) (emphasis added). "Janus says nothing about people who join a union, agree to pay dues, and then later change their mind about paying union dues." Crockett, 367 F. Supp. 3d at 1008 (citation omitted). Plaintiffs "want[] Janus to stand for the proposition that any union member can change his mind at the drop of a hat, invoke the First Amendment, and renege on his contractual obligation to pay dues." Smith v. Superior Court, County of Contra Costa, Case No. 18-cv-05472-VC, 2018 U.S. Dist. LEXIS 196089, 2018 WL 6072806, at *1 (N.D. Cal. Nov. 16, 2018). But, "[f]ar from standing for that proposition, Janus actually acknowledges in its concluding paragraph that employees can waive their First Amendment rights by affirmatively consenting to pay union dues." Id.

That is exactly what plaintiffs did here. They affirmatively consented to pay union dues and agreed that their consent could only be revoked during a specific period. "[E]ach court that has examined this issue has rejected the claim that Janus entitles union members to resign and stop paying dues on their own—rather than on the contract's—terms." Hendrickson v. AFSCME Council 18, 434 F. Supp. 3d 1014, 1024 (D.N.M. 2020) (citing Oliver v. Serv. Emp's Int'l Union Local 668, 415 F. Supp. 3d 602, 2019 WL 5964778, at *2 (E.D. Pa. Nov. 12, 2019); Seager v. United Teachers L.A., No. 219CV00469JLSDFM, 2019 U.S. Dist. LEXIS 140492, 2019 WL 3822001, at *1 (C.D. Cal. Aug. 14, 2019); [*18] Smith v. Bieker, No. 18-cv-05472-VC, 2019 U.S. Dist. LEXIS 99581, 2019 WL 2476679, at *2 (N.D. Cal. June 13, 2019); O'Callaghan v. Regents of the Univ. of Cal., Case No. CV 19-02289JVS (DFMx), 2019 U.S. Dist. LEXIS 110570, 2019 WL 2635585, at *3 (C.D. Cal. June 10, 2019); Belgau v. Inslee, No. 18-5620 RJB, 2018 U.S. Dist. LEXIS 175543, 2018 WL 4931602, at *5 (W.D. Wash. Oct. 11, 2018)); see also, Loescher v. Minnesota Teamsters Public & Law Enforcement Employees' Union, Local No. 320, __ F. Supp. 3d __, 2020 WL 912785, at *7 (D. Minn. Feb. 26, 2020) (quotation marks omitted) (rejecting argument "that the Supreme Court broadly held . . . that deduction of agency fees and any other payment to the union—which [Loescher] believes includes full dues—without affirmative consent violates the First Amendment" because "[n]othing in Janus suggests that its holding, which expressly pertains to union-related deductions from a nonmember's wages, should apply to similar collections from a union member's wages"). In short, "federal courts around the country have concluded that Janus does not apply to claims brought by union members." Molina, 2020 U.S. Dist. LEXIS 81307, 2020 WL 2306650, at *8.

Tshibaka's contention that Janus stands for the proposition that "[n]either an agency fee nor any other payment to the union" may be deducted from an employee's wages "unless the employee affirmatively consents to pay[,]" Janus, 138 S. Ct. at 2486 (emphasis added), is incorrect. Tshibaka has selectively quoted from Janus. The full quote from Janus is that "[n]either an agency fee nor any other payment to the union may be deducted from a nonmember's wages, nor may any other attempt be [*19] made to collect such a payment, unless the employee affirmatively consents to pay." Id. (emphasis added). The Janus Court was expressly addressing the payment of agency fees or other payments to a union made by nonmembers, not the payment of dues by union members such as plaintiffs.

Plaintiffs' allegations that their waiver was not sufficient under Janus does not save their claims. Plaintiffs have alleged that the

[u]nion dues checkoff authorizations signed by government employees in Alaska before the Supreme Court's decision in Janus cannot constitute affirmative consent by those employees to waive their First Amendment right to not pay union dues or fees. Union members who signed such agreements could not have freely waived their right to not join or pay a union because the Supreme Court had not yet recognized that right.[40]

Plaintiffs allege that their "consent to dues deduction was not an effective waiver of their rights because they did not have and were not provided with complete information about their rights at the time they joined."[41]

"'Waiver is the intentional relinquishment or abandonment of a known right.'" United States v. Gonzalez-Flores, 418 F.3d 1093, 1102 (9th Cir. 2005) (quoting United States v. Hamilton, 391 F.3d 1066, 1071 (9th Cir. 2004)). "'Constitutional rights may ordinarily be waived [only] if it can be established [*20] by clear and convincing evidence that the waiver is voluntary, knowing, and intelligent.'"[42] Gete v. I.N.S., 121 F.3d 1285, 1293 (9th Cir. 1997) (quoting Davies v. Grossmont Union High Sch. Dist., 930 F.2d 1390, 1394 (9th Cir. 1991)). "A waiver of constitutional rights is voluntary if, under the totality of the circumstances, it was the product of a free and deliberate choice rather than coercion or improper inducement." Comer v. Schriro, 480 F.3d 960, 965 (9th Cir. 2007).

Plaintiffs argue that they did not know at the time they signed the dues authorization that they had a choice to pay nothing because Janus had not been decided at that time. They argue that at the time they signed the dues authorization they did not know they had a constitutional right to pay nothing. In short, plaintiffs argue that they could not voluntarily waive a right they did not know they had.

Tshibaka argues that this also means that plaintiffs' waiver was not knowing and intelligent. Tshibaka contends that in order for plaintiffs' waiver to be knowing and intelligent, they must have had "'a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" Patterson v. Illinois, 487 U.S. 285, 292, 108 S. Ct. 2389, 101 L. Ed. 2d 261 (1988)) (quoting Moran v. Burbine, 475 U.S. 412, 421, 106 S. Ct. 1135, 89 L. Ed. 2d 410 (1986)). Tshibaka argues that plaintiffs' waiver was not knowing and intelligent because they were not aware that they had an option to not pay any union dues or fees. Tshibaka cites [*21] to two cases in support this argument.

In Curtis Publishing Company v. Butts, 388 U.S. 130, 137-38, 87 S. Ct. 1975, 18 L. Ed. 2d 1094 (1967), Butts brought a libel action against Curtis and on appeal, Curtis raised constitutional defenses that it had not raised at trial. The issue before the Court was whether "Curtis' failure to raise constitutional defenses amounted to a knowing waiver." Id. at 143. The Court held that Curtis had not waived its constitutional defenses because the constitutional defense at issue had not been "known" at the time of the trial. Id. at 145. Rather, the defense at issue had been established by the Court in the New York Times case, a decision that was not available at the time of the Butts/Curtis trial. Id.

Sambo's Restaurants, Inc. v. City of Ann Arbor, 663 F.2d 686, 687 (6th Cir. 1981), "raise[d] novel freedom of speech issues regarding the standard for the waiver of first amendment rights and the scope of first amendment protection to be afforded 'offensive' commercial speech." Sambo's sued the City after it "revoked . . . sign permits on the grounds that the use of the name 'Sambo's' violated the 1972 'agreement' with the City." Id. at 688. The 1972 "agreement" was a site plan in which Sambo's agreed to not use that name on its restaurant in order to gain the City's approval of the site plan. Id. On appeal, the City argued that Sambo's had waived its First Amendment rights in 1972. But, the court found [*22] that

> Sambo's did not have First Amendment commercial speech rights in 1972 which it could waive. A waiver, at the least, is the relinquishment of a known right. Since Sambo's had no commercial speech rights protected by the First Amendment in 1972, it could not have waived any rights by stating that the name "Sambo's" would not be used in connection with the restaurant.

Id. at 693 (internal citation omitted).

Tshibaka's reliance on these cases is misplaced as neither case involved "a situation where there is an agreement which is binding as a matter of state contract law." Id. at 691. As one court recently stated, Sambo's "does not stand for the proposition that newly recognized First Amendment rights can vitiate a preexisting contract." Allen v. Ohio Civil Service Employees Association AFSCME, Local 11, Case No. 2:19-cv-3709, 2020 U.S. Dist. LEXIS 48481, 2020 WL 1322051, at *9 (S.D. Ohio Mar. 20, 2020). Here, there was a preexisting

---

[40] Complaint at 1-2, ¶ 2, Docket No. 1.

[41] Id. at 10, ¶ 43.

[42] As ASEA points out, "[a]lmost without exception, the requirement of a knowing and intelligent waiver has been applied only to those rights which the Constitution guarantees to a criminal defendant in order to preserve a fair trial[.]" Schneckloth v. Bustamonte, 412 U.S. 218, 237, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973). But for purposes of ASEA's motion to dismiss, the court will assume that this heightened standard applies here.

contract between plaintiffs and ASEA in which plaintiffs voluntary chose to become union members and have dues deducted from their paychecks unless and until they revoked their authorizations during a specific revocation window.

Tshibaka also argues that plaintiffs' waiver cannot be considered voluntary because ASEA controls the environment in which the employee is asked to sign the authorization. [*23] In his opinion about the impact of Janus, the State Attorney General contended that "some collective bargaining agreements require new employees to report to the union office within a certain period of time, where a union representative presents the new hire with the payroll deduction form" and that the State has no way of knowing what information the employee is provided "at the critical moment the employee is confronted with the decision whether to waive his or her First Amendment rights."[43] That ASEA may have controlled the environment in which plaintiffs made their decision to join the union does not mean that plaintiffs' waiver of the First Amendment rights was coerced, as opposed to voluntary.

First of all, Riberio does not allege that he felt "forced" to join the union. Rather, Riberio alleges that he joined the union because he thought it would benefit him.[44] Creed does allege that she felt "forced" to either join the union and pay dues or not join the union and pay fees,[45] an allegation that the court accepts as true for purposes of a motion to dismiss. But, she alleges that her decision was "forced" because she was not given the right identified in Janus, the right to not join the union and not pay any fees. [*24] [46] And, courts have routinely rejected such an argument, that an employee's consent to join the union was not voluntary because he or she did not know of the constitutional right declared in Janus. See Crockett, 367 F. Supp. 3d at 1008 ("[t]he fact that plaintiffs would not have opted to pay union membership fees if Janus had been the law at the time of their decision does not mean their decision was therefore coerced"); Quirarte v. United Domestic Workers/AFSCME Local 3930, Case No. 19-CV-1287-CAB-KSC, 2020 U.S. Dist. LEXIS 23469, 2020 WL 619574, at *6 (S.D. Cal. Feb. 10, 2020) (same); Bennett v. Amer. Federation of State, County, and Municipal Employees, Council 31, __ F. Supp. 3d __, 2020 U.S. Dist. LEXIS 59426, 2020 WL 1549603, at *5 (C.D. Ill. Mar. 31, 2020) ("[t]he fact that Plaintiff did not sign a waiver of the later-identified First Amendment right to not pay a fair-share fee does not invalidate her agreement to join the Union" as that agreement "was not the product of coercion and was not involuntary simply because Janus made union membership less appealing"); Oliver, 415 F. Supp. 3d at 607 (the "[p]laintiff contend[ed] that if only she had known of a constitutional right to pay nothing for services rendered by the Union—despite knowledge of her right at the time to refuse membership and pay less—she would have declined union membership completely" but the court could "discern no logic in such a position" in part because the "plaintiff [did] not allege[] she was actively pressured to join" the union); Babb v. Calif. Teachers Assoc., 378 F. Supp. 3d 857, 877 (C.D. Cal. 2019) (citation [*25] omitted) ("[t]he fact that plaintiffs would not have opted to pay union membership fees if Janus had been the law at the time of their decision does not mean their decision was therefore coerced"). As the court in Bennett, 2020 U.S. Dist. LEXIS 59426, 2020 WL 1549603, at *4, explained "[i]f incarcerated defendants cannot rescind agreements as involuntary in light of subsequently developed constitutional caselaw,[47] civil litigants disputing property rights should fare no differently. Accordingly, [the p]laintiff's obligation to pay union dues . . . remains enforceable despite the new constitutional right identified in Janus." Here too, plaintiffs cannot avoid their contractual obligations by alleging that their waiver of their First Amendment rights was not voluntary based on "the new constitutional right identified in Janus." Id.

In addition, any argument that the revocation window in plaintiffs' contract is itself unconstitutional fails, and in fact, plaintiffs contend that they are not arguing that the revocation window is itself unconstitutional.[48] Rather, they contend that they are arguing that they must be released from their authorizations outside the revocation window because the authorizations were invalid in the first place.

But, as discussed [*26] above, plaintiffs voluntarily agreed to join the union and have dues deducted from their paychecks. Their union membership agreements were binding contracts

---

[43] Clarkson Opinion, Exhibit C at 11-12, Complaint, Docket No. 1.

[44] Complaint at 5, ¶ 19, Docket No. 1.

[45] Id. at 5, ¶ 18.

[46] Id. at 10, ¶ 41.

[47] See, e.g., Brady v. United States, 397 U.S. 742, 757, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970) (observing that "a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise").

[48] Plaintiffs acknowledge that "[i]f a new employee knowingly, intelligently gave affirmative consent post-Janus to a membership form, that could legally bind him or her to a reasonable once-annual revocation window." Plaintiffs' Memorandum in Response to ASEA's Motion to Dismiss and in Support of Their Cross Motion for Summary Judgment at 18, Docket No. 28.

that remain enforceable even after Janus. See Crockett, 367 F. Supp. 3d at 1008 ("Plaintiffs McKee and Liston's agreement to become union members in exchange for benefits created a contract between them and their unions that remains enforceable after Janus"); Belgau, 2018 U.S. Dist. LEXIS 175543, 2018 WL 4931602, at *5 ("[h]ere, unlike in Janus, the Plaintiffs entered into a contract with the Union to be Union members and agreed in that contract to pay Union dues for one year"); Smith, 2018 U.S. Dist. LEXIS 196089, 2018 WL 6072806, at *1 (Smith "formed a contract with Local 2700 in which he agreed to pay dues for a year" and "Smith cannot now invoke the First Amendment to wriggle out of his contractual duties"); Fisk, 2017 U.S. Dist. LEXIS 170910, 2017 WL 4619223, at *4 (finding that "[a] signed Membership Card is a valid contract").

Because of these binding contracts, plaintiffs have not stated a plausible violation of their First Amendment rights. Thus, they have failed to state plausible § 1983 claims.[49] Plaintiffs' § 1983 First Amendment claims are dismissed. Plaintiffs are not given leave to amend these claims, which are the only claims asserted in their complaint, as any amendment would be futile.

Conclusion

Based on the foregoing, ASEA's motion to dismiss is granted, and plaintiffs' cross-motion [*27] for summary judgment is denied as moot.

DATED at Anchorage, Alaska, this 14th day of July, 2020

/s/ H. Russel Holland

United States District Judge

**End of Document**

---

[49] Because plaintiffs have not plausibly alleged a constitutional violation, the court need not address the issue of whether ASEA was acting under color of state law or its good faith defense.