UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL JACKSON, et al.<br><br>Plaintiffs,<br><br>v.<br><br>JANET NAPOLITANO, et al.<br><br>Defendants. | Case No.: 19cv1427-LAB (AHG)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS; AND**<br><br>**ORDER ON MOTION RE: HEARING**<br><br>**[DOCKET NUMBERS 8, 9, 10, 31, 38.]** |

This is a §1983 action, seeking relief for employees of the University of California at San Diego who had union dues withheld from their paychecks and who face the prospect of having dues withheld in the future. They seek relief under the recent Supreme Court decision, *Janus v. Am. Fed. of State, Cnty. & Mun. Employees, Council 31*, 138 S. Ct. 2448 (2018). Under *Janus* and *Knox v. Serv. Employees Int'l Union, Local 1000*, 567 U.S. 298, 322 (2012), public employees have a First Amendment right not to join a union or to pay fees to the union unless they affirmatively consent to waive that right. On the day *Janus* was decided, Gov. Brown signed S.B. 866 into law and it became effective immediately. Plaintiffs refer

to certain provisions in that law as "Gag Rule" statutes, which prevent public employees from protesting payroll deductions with their employers. They seek declaratory and injunctive relief, and damages in the amount of dues that were deducted from their paychecks.

Defendants filed three motions to dismiss: one by Janet Napolitano (Docket no. 8), one by the Union, Teamsters Local 2010 (Docket no. 9), and one by Xavier Becerra and Betty T. Yee (Docket no. 10).  Plaintiffs' counsel filed an *ex parte* motion to split their allotted time for argument. (Docket no. 31.)  The Court then held argument, and ruled on that request from the bench.  The Clerk is directed to directed to terminate Docket no. 31.

Shortly after that, the Union filed several notices of supplemental authority, followed by a new motion to dismiss (Docket no. 38).  That motion is now fully briefed as well, and all motions are now ready for disposition.

**Background**

The following background is taken from the complaint, whose factual allegations the Court accepts as true at this stage.  The two named Plaintiffs were members of the Union since 2016. Plaintiff Michael Jackson says he thought union membership was a condition of employment, though he doesn't say why he thought this. According to the complaint, the "Gag Rule" prevents employers from talking with their employees about payroll deductions, union membership, or *Janus*.

After learning about *Janus*, Plaintiffs began looking for an opportunity to resign their membership. The Plaintiffs resigned by letter in early 2019. After that, they tried to stop deductions of their union dues. Jackson wrote to the University, which told him to take it up with the Union.  The Union told him that his resignation was accepted, but that under the terms of the agreement his dues would still be deducted until the expiration of the bargaining agreement. According to the complaint, the current bargaining agreement went into effect April 19, 2017 and

expires March 31, 2022. Plaintiff Tory Smith apparently wrote to the Union directly, and got the same response. Then Smith asked the University to stop deducting dues from his paycheck, but got no reply.

At argument, it was established that Yee follows the Union's directions with regard to deduction of dues. Her role, in other words, is nondiscretionary and she was added as a Defendant in order to afford Plaintiffs adequate relief.

**Relief Sought**

Plaintiffs ask the Court to grant declaratory relief in the following forms:

1. Declare that their collective bargaining agreement and certain California statutes violate their free speech rights;
2. Declare that Plaintiffs' signed Union membership cards do not meet the standard for affirmative consent;
3. Declare that the practice of withholding Union dues from Plaintiffs' paychecks in the absence of affirmative consent is unconstitutional; and
4. Declare that S.B. 866, the "Gag Rule," is unconstitutional under the First and Fourteenth Amendments.

They also ask the Court to enjoin Defendants, as follows:

1. Order the Union to allow Plaintiffs to resign their membership immediately and retroactive to the date of their letters announcing their resignation;
2. Enjoin Yee from continuing to deduct Union dues without their consent;
3. Enjoin Becerra from enforcing S.B. 866, the "Gag Rule; and
4. Enjoin Yee from deducting money from any public employee's paychecks without proper consent.

Finally, they ask, as damages, all Union dues collected from them in the absence of their valid consent. They request costs and attorney's fees under 42 U.S.C. § 1988, and any other relief the Court may deem just and proper.

/ / /

/ / /

**Union's Second Motion to Dismiss as Moot**

This motion brings a factual attack, and is based on both Plaintiffs' own concessions and documentary evidence. The motion argues that Plaintiffs' claims have now become moot, depriving the Court of jurisdiction. If, as the Union argues, Plaintiffs' claims have become moot, the Court lacks jurisdiction. *See Allen v. Wright*, 468 U.S. 737, 750 (1984). The Court would be required to consider mootness *sua sponte* in any event, before proceeding to the merits, because mootness is jurisdictional. *See Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 94–95 (1998); *Gator.com Corp. v. L. L. Bean, Inc.*, 398 F.3d 1125, 1129 (9th Cir. 2005) (en banc). A case becomes moot when it loses its character as a live controversy, *i.e.*, when it becomes impossible for the Court to grant any effectual relief to the prevailing party. *See N.Y. State Rifle & Pistol Ass'n, Inc. v. City of New York, N.Y.*, 140 S. Ct. 1525, 1528 (2020). In other words, a case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome" of the litigation. *Powell v. McCormack*, 395 U.S. 486, 496 (1969).

The Court is also obligated to raise any other jurisdictional issues, such as standing, *sua sponte* if necessary. *See Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 954 (9th Cir. 2011) (en banc). In other words, the Court must raise and address any apparent jurisdictional problems even if the parties do not.

Plaintiffs bear the burden of establishing standing at each and every stage of the litigation, *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1141 (9th Cir. 2010), and for each claim and form of relief sought. *See Davis v. Fed. Elec. Comm'n.*, 554 U.S. 724, 734 (2008). To do this, they must show 1) they have suffered an injury in fact that is concrete and particularized, and actual or imminent rather than conjectural or hypothetical; 2) the injury is fairly traceable to Defendants' challenged actions; and 3) it is likely rather than merely speculative that the injury

/ / /

will be redressed by a favorable decision. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000).

Mootness and standing are related. The doctrine of mootness has been described as standing "set in a time frame." *Id.* at 170. That is, the personal existence that must exist at the beginning of the case (standing) must also continue through all its later stages (mootness). *Id.*

A plaintiff seeking to establish standing for injunctive or declaratory relief must demonstrate such an invasion of a legally protected interest along with a "sufficient likelihood that he will again be wronged in a similar way." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). This is because "'past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Id.* at 95–96, 102 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)).

Declaratory relief is intended to operate prospectively, not merely to make a statement about past events. *See Britz Fertilizers, Inc. v. Bayer Corp.*, 66 F. Supp. 2d 1142, 1173 (E.D. Cal., 2009). "Declaratory relief is appropriate (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Eureka Fed. Sav. & Loan Assoc. v. American Cas. Co.*, 873 F.2d 229, 231 (9th Cir. 1989). It requires a "substantial controversy, between parties having adverse legal rights, or sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).The Court has no jurisdiction to grant declaratory relief to settle disputes that are merely hypothetical. *See id.*

///
///

**Standing and Mootness in This Case**

Importantly, this is not a class action, putative class action, or anything analogous. It is not likely that Plaintiffs could amend to make it a class action at this point — or, even if they did, that it could be certified.[1] Although Plaintiffs make clear they want to treat this as a test case to bring about a change in the law, they are not representing anyone but themselves.

Some of the relief sought is for the benefit of public employees generally. While on occasion a plaintiff outside the class action context may have standing to raise the rights of third parties, those conditions are not met here. *See Powers v. Ohio*, 499 U.S. 400, 410–11 (1991). Plaintiffs tacitly acknowledge this in their opposition, and request that if their complaint is dismissed, they be granted leave to amend so that they can bring this as a class action.

Plaintiffs' ability to represent a class depends, however, on their having viable claims themselves. If, for example, they themselves lack standing, they cannot represent class members. *See NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. S.W., Inc.*, 926 F.3d 528, 532 (9th Cir. 2019). While mootness is applied more flexibly in the class action context*, see generally Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081 (9th Cir. 2011), a plaintiff whose claim became moot before he even pled class claims would not be an adequate representative. *See*

---

[1] Whether employees should be given information that might encourage them to withdraw from a union is a contentious issue, about which public employees clearly have different opinions. It is difficult to see how an ascertainable class could be defined so as to include public employees who oppose the Gag Rule and to exclude those who do not. *See Algarin v. Maybelline*, 300 F.R.D. 444, 454 (S.D. Cal. 2014) (holding that before a class action can proceed, it must be administratively feasible to determine whether someone is a class member on the basis of objective criteria, rather than their state of mind). The Court could grant injunctive or declaratory relief only to the extent it advances the interests of the class as a whole. *See* Fed. R. Civ. P. 23(b)(2).

*J.P. v. Sessions*, 2019 WL 6723686, slip op. at *23 (C.D. Cal., Nov. 5, 2019) (citing *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396–97 (1980)). This is not likely to happen here.

### Particular Claims

Plaintiffs' standing is easily strongest with regard to their damages claim. With regard to their claims for prospective injunctive and declaratory relief claims, standing is far more speculative.

### Union Membership

At the time this action was filed, Plaintiffs had already been permitted to resign from the Union. Their request for an injunction ordering the Union to allow them to resign was therefore moot *ab initio*. This also appears to moot Plaintiffs' request for declaratory relief about Plaintiffs' right to withdraw from the Union. With regard to the collective bargaining agreement's effect on their ability to withdraw from Union membership, the claim appears moot as well. There is no reasonable prospect they will again become Union members against their will. The issue of the collective bargaining agreement's effect on the withholding of Union dues is separate, however.

### Equitable Relief

While some of the injunctive relief Plaintiffs seek may provide them prospective relief, the declaratory relief they request would not add anything to it. Rather, it would amount to a comment on things that have already happened, rather than a clarification of the parties' rights going forward.

Some of the requested declaratory relief is also overly broad, commenting on the law generally rather than clarifying Plaintiffs' own rights. Equitable relief may extend benefits to others, if necessary to give Plaintiffs the relief they are entitled. *See Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1501–02 (9th Cir. 1996). But its proper purpose is to give Plaintiffs relief, not to effect a change in the law statewide. Plaintiffs' request that the Court declare S.B. 866, the "Gag Rule,"

unconstitutional under the First and Fourteenth Amendments falls into this category.

For Plaintiffs to have standing to seek this relief, it is not enough that others could benefit from it; it must be likely that Plaintiffs themselves would derive some benefit from it. *See Walsh v. Nevada Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006).

**Post-Filing Developments**

After Plaintiffs filed their complaint, the Union fully refunded all dues Plaintiffs paid to it during the period within the statute of limitations, with interest, and released them from all obligations to pay dues going forward. Documentary evidence of cashier's checks payable to both Plaintiffs is attached to the motion.

Plaintiffs do not dispute that tender was made, and do not argue that it was for less than the amount they were entitled to. (*See* Docket no. 45 (Opp'n) at 16:9–9.) They refused delivery of the checks, however. (*Id.*) Instead, they argue that the Union's acts amount to "voluntary cessation" that might resume at any time. They also argue that their real purpose is to challenge the "Gag Rule." Plaintiffs cite class action cases in which Defendants attempted to "pick off" individual plaintiffs by settling with them. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 78 (2013) (citing *Deposit Guaranty Nat. Bank v. Roper*, 445 U.S. 326, 339 (1980)) (noting concern that defendants may attempt to "pick off" named plaintiffs before class action is adjudicated).

There are two problems with Plaintiffs' arguments. First, the Union's actions do not amount to a settlement or even a settlement offer. Before they filed suit, Plaintiffs asked the Union to refund dues that were withheld before this action began, and the Union has now done that, albeit somewhat late. Plaintiffs do not dispute that the amount of the refund is correct. Defendants also correctly point

/ / /

/ / /

out that the payment was unconditional, as the accompanying letters showed.[2] Plaintiffs could cash the checks regardless of whether they agreed to dismiss the suit. No further action on Plaintiffs' part was required in order for them to be paid.

Second, nearly all the cases they cite and rely on are class actions, putative class actions, or collective actions, where the mootness analysis is different than in individual actions. In a class action, courts are wary of the tactic of allowing defendants in class actions (or putative class actions) to "pick off" individual plaintiffs by settling with them, or even by attempting to force a settlement on them. By contrast, this case is not a putative class action and likely cannot be pled as one. *See Genesis Healthcare*, 569 U.S. at 73–74 (holding that plaintiff's suit, which was not a class action, was moot once her own claim was satisfied). Plaintiffs' reiterated intent to act as private attorneys-general in order to change the law on behalf of other public employees is misguided. If they were bringing a class action, that would be possible. But because they are litigating as individual Plaintiffs only, they cannot do this. They can bring only their own claims, and they must demonstrate standing as to each form of relief.

The decisions they cite other than class actions are distinguishable on the basis that defendants made settlement offers different in kind of amount than the relief they sought. For example, in *Lawrence v. FCA US LLC*, 2017 WL 6940513 (C.D. Cal., Sept. 12, 2017), the plaintiff sued for various damages stemming from fraudulent concealment, and rejected a pre-suit offer to repurchase her car. Instead, she sought monetary damages. *Id*. at *4. *See Wieck v. CIT Group, Inc.*, 308 F. Supp. 3d 1093, 1108 n.5 (D. Haw. 2018) (citing cases for the proposition

---

[2] Earlier, Defendants' counsel had sent Plaintiffs' counsel an email suggesting, as a settlement term, a refund of dues plus a release from further obligations for withholding of dues. (Docket no. 45-2 (Opp'n, Ex. A).) Plaintiffs' counsel rejected that proposal out of hand. (*Id.*) Defendants' later refund of dues and cancellation of authorization was gratuitous.

that a refund does not require dismissal for lack of standing, where the plaintiff also suffered other losses). The fact that Plaintiffs have refused to accept or cash the checks does not change the analysis. *See Hamilton v. Gen'l Mills*, 2016 WL 6542840, at *1 (D. Ore., Nov. 2, 2016) (plaintiff's claim was mooted by defendant's product recall program and proffered refund, which would have covered his entire loss, but which he refused to accept).

This same principle has been applied in the context of withheld union dues following *Janus*. In *Durst v. Ore. Educ. Ass'n*, ___ F. Supp. 3d ___, 2020 WL 1545484 (D. Ore. Mar. 31, 2020), public teachers brought an action that included a claim almost indistinguishable from this one. They, like Plaintiffs here, refused to cash the union's refund checks. But that fact, the court held, did "not turn an otherwise moot claim into a live case or controversy." *Id*. at *3.

In *Genesis Healthcare*, the Supreme Court considered a case where the plaintiff had received all she sought in her own lawsuit, but still wanted to represent the rights of others. That interest, by itself, did not amount to a "personal stake" and was not enough to save her action from mootness. 569 U.S. at 78–79. Analogously to this case, the Union has refunded (or attempted to refund) Plaintiffs' wrongly-withheld dues as Plaintiffs asked it to. Plaintiffs have refused to accept them, not because something is unsatisfactory about the refund, but because they want to keep their injury intact for standing purposes. A plaintiff's interest in keeping the suit going, or in representing others in the suit, is not enough to save a claim from mootness. *Id*. at 74.

The Court finds *Durst* persuasive, and therefore holds Plaintiffs' claim for a refund of their withheld union dues is moot. That does not, of course, mean that all their claims are moot; standing and mootness are considered with regard to each claim separately. *See Davis*, 554 U.S. at 734.

/ / /

/ / /

**Continued Withholding of Dues**

The Union has instructed the University not to withhold Plaintiffs' dues, and the University is complying. That, however, does not necessarily render claims moot. A party "cannot automatically moot a case simply by ending its unlawful conduct once sued"— otherwise, it "could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where [it] left off, repeating this cycle until [it] achieves all [its] unlawful ends." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). A plaintiff's claim becomes moot through a defendant's voluntary cessation only if "it is *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to occur." *Friends of the Earth*, 528 U.S. at 90. The "reasonable expectation" language is significant. If "interim relief or events have *completely and irrevocably* eradicated the effects of the alleged violation," <u>and</u> if there is no reasonable expectation the alleged violation will occur, the claim may be moot. *See Smith v. Univ. of Washington*, 233 F.3d 1188, 1194 (9th Cir. 2000). The voluntariness of a defendant's cessation is a factor bearing on the likelihood of the behavior's recurrence. *Id.*

Plaintiffs' withholding of dues claim stems from the Union's withholding of their dues even after they withdrew from as members. Until the collective bargaining agreement expires on March 31, 2022, the Union could, in theory, at least, revoke the instruction it sent to the University, which would result in dues again being withheld from Plaintiffs' paychecks.

Defendants, however, provide letters signed by the Union's counsel and purporting to act on behalf of the Union, releasing Plaintiffs from the authorizations: "On behalf of the Union I am confirming that the Union has released plaintiffs from any further obligations under any dues-deduction agreements they had with the Union." (Docket no. 38-2, Ex. A, at 4–5 (letter dated March 25, 2020).) In light of this formal undertaking by Defendants' counsel, combined with the fact that Plaintiffs are no longer Union members, it appears unlikely the Union will attempt

to revoke its cancellation of Plaintiffs' authorization. In similar circumstances, courts in this Circuit have found claims moot. *See Stroeder v. Serv. Employees Int'l Union*, 2019 WL 6719481, slip op. at *3 (D. Ore., Dec. 6, 2019) (where plaintiff was no longer a union member, her dues were no longer being deducted from her paycheck, and her dues authorization was no longer in effect, her claim was moot); *Babb v. Cal. Teachers Ass'n*, 378 F. Supp. 3d 857, 886 (C.D. Cal., 2019) (same).

That being said, the Union itself did not make the representation nor did it confirm in a clearly irrevocable fashion that the authorization had been cancelled. Plaintiffs might be able to show a reasonable possibility that the Union would revoke its cancellation of their authorization to withhold dues and in spite of its counsel's representation would instruct the University to continue withholding dues. If Plaintiffs believe they can rebut Defendants' showing that the withholding of dues will not resume before March 31, 2022, they will be given leave to do so. Otherwise, the Court will treat this claim as moot also.

**Invalidation of "Gag Rule"**

The complaint alleges that the "Gag Rule" prevents the University from informing its employees of the rights they enjoy under *Janus*, and that the Union unsurprisingly also does not tell employees about the effect of *Janus*. (Compl., ¶¶ 57–69.) The effect of the Gag Rule, Plaintiffs allege, was to vitiate the voluntariness of their written consent to withhold dues. (*Id.*, ¶¶ 115–129.) Voluntariness is a live issue only to the extent it affects money withheld from them in the past, or money likely to be withheld in the future. As discussed, these issues appear to have been resolved.

Plaintiffs also seek equitable relief to invalidate the Gag Rule going forward, and to prevent its being enforced. The problem with this is that Plaintiffs already know about *Janus*, and do not need either the University or the Union to tell them about their rights. The possibility that they might need to know more about *Janus*
/ / /

in the future is speculative and hypothetical. Nor are they likely to consider signing a similar union agreement in the future.

While other public employees might want to know about *Janus*, they are not parties. The University might have standing to complain about the rule's restrictive effect on its own communications, but it has not brought a claim either. The only limitation that might affect Plaintiffs at this point is the University's policy of not cooperating with organizations that might want to communicate with its employees about their rights not to join a union or pay union dues. (*Id.*, ¶ 65–66.) But Plaintiffs do not allege they seek the University's cooperation to communicate with their fellow employees about these matters.

In short, Plaintiff have already suffered all the harm from the Gag Rule that they are likely to suffer. The rule does not appear to affect them going forward, and they are not likely to be harmed in a similar way by the continued application of this rule. *See Lyons*, 461 U.S. at 111. Even if the rule were to affect them somehow in the future, that harm is speculative and hypothetical, rather than actual or imminent. A declaration and an injunction preventing the rule's enforcement in future might help other employees, but it would do nothing for Plaintiffs.

**Sanctions Requests**

In their opposition, Plaintiffs move for sanctions against Defendants, on the basis that their arguments are frivolous and did not disclose contrary authority. They also complain of ethical violations, alleging that sending Plaintiffs the cashiers checks violated rules against communicating with represented parties, although they do not seek sanctions for that.

Even if the Court agreed with Plaintiffs' request for sanctions, an opposition to a motion is not a proper vehicle for seeking sanctions. *See* Fed. R. Civ. P. 11(c).

**Conclusion and Order**

The Union's second motion to dismiss (Docket no. 38) is **GRANTED**. Some of Plaintiffs' claims are moot, and they lack standing to bring the remainder. All

claims are **DISMISSED WITHOUT PREJUDICE**, for failure to invoke the Court's jurisdiction.

In the absence of jurisdiction, the Court cannot proceed to the merits, and the three other motions to dismiss (Docket nos. 8, 9, and 10) are **DENIED WITHOUT PREJUDICE**.

This order has raised jurisdictional issues that Plaintiffs may not have been alert to, but could cure through amendment. They may believe that continued enforcement of the Gag Rule in the future will affect their substantive rights in ways they have not alleged. Additionally, they may believe they can rebut Defendants' showing that there is no reasonable likelihood dues will again be withheld before the collective bargaining agreement expires.

If Plaintiffs believe that, even in light of the Court's analysis and decision in this order this case presents a live, justiciable controversy, they may show cause why it should not be dismissed for lack of jurisdiction. They may do so by filing a memorandum, not longer than ten pages, not counting any attached or lodged material, within **21 calendar days of the date this order is issued**. The Court is <u>not</u> inviting a motion to reconsider this order or its reasoning, and any memorandum should not attempt to seek reconsideration. Rather, any response should focus on any claims this order has not addressed (*e.g.*, claims they have not pled, but could), and on whether the Union is reasonably likely to instruct the University to withhold dues from Plaintiffs' paychecks before March 31, 2022.

If Plaintiffs file a memorandum, Defendants may file a response subject to the same page limit, within **28 calendar days of the date this order is issued.**

/ / /
/ / /
/ / /
/ / /
/ / /

If Plaintiffs do not show cause within the time permitted, this action will be dismissed without prejudice for lack of jurisdiction.

**IT IS SO ORDERED**.

Dated:  September 23, 2020

Honorable Larry Alan Burns
Chief United States District Judge